## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETROTERMINAL DE PANAMA, S.A., | |
| Plaintiff, | |
| vs. | CIVIL ACTION NO.: 08 CV 00547 (JSR)(AJP) |
| HOUSTON CASUALTY COMPANY, NATIONAL LIABILITY & FIRE INSURANCE COMPANY a/k/a NATIONAL FIRE & LIABILITY INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, and CONTINENTAL INSURANCE COMPANY, | **ANSWER AND JURY DEMAND** |
| Defendants. | |

Defendants, Houston Casualty Company, National Liability & Fire Insurance Company a/k/a National Fire & Liability Insurance Company, Liberty Mutual Insurance Company, Great American Insurance Company of New York, Indemnity Insurance Company of North America, and Continental Insurance Company (hereinafter collectively referred to as "Underwriters Subscribing to Policy No. 06/663" or "Bumbershoot Underwriters"), jointly by undersigned counsel, for their Answer to the Complaint of Petroterminal de Panama, S.A. (hereinafter, "PTP"), state as follows:

1.      The allegations of Paragraph 1 constitute conclusions of law and do not call for answer by these Defendants.  Should it be determined that a response to said allegations is required, they are denied.

2.      The allegations of Paragraph 2 constitute conclusions of law and do not call for answer by these Defendants.  Should it be determined that a response to said allegations is required, they are denied.  It is specifically denied that Bumbershoot Underwriters have in any regard breached any contractual obligations to PTP.

3.      The allegations of Paragraph 3 constitute conclusions of law and/or a request for relief and do not call for answer by these Defendants.

4.      Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 4.

5.      Houston Casualty Company is a foreign insurer, domiciled in and with its principal place of business in Houston, Texas.  Otherwise the allegations of Paragraph 5 of the Complaint are denied.

6.      National Liability & Fire Insurance Company a/k/a National Fire & Liability Insurance Company is a foreign insurer, domiciled in Connecticut, with its principal place of business in Omaha, Nebraska.  Otherwise the allegations of Paragraph 6 of the Complaint are denied.

7.      Liberty Mutual Insurance Company is a foreign insurer, domiciled in Massachusetts, with its principal place of business in Boston, Massachusetts.  Otherwise the allegations of Paragraph 7 of the Complaint are denied.

8.    Great American Insurance Company of New York is domiciled in the State of New York, with its principal place of business in Cincinnati, Ohio.  Otherwise the allegations of Paragraph 8 of the Complaint are denied.

9.    Indemnity Insurance Company of North America is a foreign insurer, domiciled in Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.  Otherwise the allegations of Paragraph 9 of the Complaint are denied.

10.    Continental Insurance Company is a foreign insurer, domiciled in Pennsylvania, with its principal place of business in Chicago, Illinois.  Otherwise the allegations of Paragraph 10 of the Complaint are denied.

11.    Subject matter jurisdiction is admitted.

12.    It is admitted that venue is proper in this District.

13.    Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 13.

14.    Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 14.

15.    Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 15.

16.    Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 16.

17.    Bumbershoot Underwriters admit that they have received some communications from Frenkel's New York offices regarding the claims in suit.  However, Bumbershoot Underwriters deny that Frenkel provided any such communications to adjusters acting on behalf of Bumbershoot Underwriters prior to the filing of the Complaint.  Otherwise, Bumbershoot

Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 17.

18.     Underwriters Subscribing to Policy No. 06/663 admit the allegations in Paragraph 18 of the Complaint only to the extent that a certain written policy of insurance, designated as Policy No. 06/663, provides certain "Excess Marine General Liability" insurance to PTP with limits of $45 million excess of $1 million scheduled and any other underlying insurance, for the Policy Period from December 1, 2006 to December 1, 2007, subject to all said policy's written terms, conditions, warranties, and exclusions. Otherwise the allegations of Paragraph 18 of the Complaint are denied, as same do not fully reflect the terms of the insurance policy, which written contract is the best and only proper evidence of its contents and which written contract is hereby pled as if copied herein *in extenso*.

19.     Underwriters Subscribing to Policy No. 06/663 admit the allegations in Paragraph 19 of the Complaint only to the extent that a certain written policy of insurance, designated as Policy No. 06/663, is admitted to provide certain "Excess Marine General Liability" insurance to PTP with limits of $45 million excess of $1 million scheduled and any other underlying insurance, for the Policy Period from December 1, 2006 to December 1, 2007, subject to all said policy's written terms, conditions, warranties, and exclusions. Otherwise the allegations of Paragraph 19 of the Complaint are denied, as same do not fully reflect the terms of the insurance policy, which written contract is the best and only proper evidence of its contents and which written contract is hereby pled as if copied herein *in extenso*.

20.     The allegations of Paragraph 20 are admitted, subject to the written terms, conditions, warranties, exclusions and limits of liability of Policy No. 06/663, and the

Bumbershoot Underwriters signatory thereon may only be liable for their respective percentages, severally and not jointly, and not one for the other, in all circumstances including insolvency.

21.    The allegations of Paragraph 21 of the Complaint are denied, as same do not fully reflect the terms of the Primary Marine Liabilities Policy No. 06/662 or Bumbershoot Policy No. 06/663, which written contracts are the best and only proper evidence of their contents and which written contracts are hereby pled as if copied herein *in extenso*.

22.    Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 22.

23.    Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 23.

24.    Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 24.

25.    Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 25.

26.    Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 26.

27.    Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 27.

28.    Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 28.

29.    Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 29.

30.     Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 30.

31.     The allegations of Paragraph 31 of the Complaint are denied.

32.     Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 32.

33.     The allegations of Paragraph 33 of the Complaint are denied.

34.     The allegations of Paragraph 34 of the Complaint are denied.

35.     The allegations of Paragraph 35 of the Complaint are denied.

## AS TO THE FIRST CLAIM FOR RELIEF

36.     The allegations of Paragraph 36 of the Complaint merely constitute recitation of prior allegations, to which Defendants' responses are also reiterated, as if copied *in extenso* herein.

37.     The allegations of Paragraph 37 of the Complaint are denied.

38.     The allegations of Paragraph 38 of the Complaint are denied.

39.     The allegations of Paragraph 39 of the Complaint are denied.

## AS TO THE SECOND CLAIM FOR RELIEF

40.     The allegations of Paragraph 40 of the Complaint merely constitute recitation of prior allegations, to which Defendants' responses are also reiterated, as if copied *in extenso* herein.

41.     The allegations of Paragraph 41 of the Complaint are conclusions of law which do not call for answer by these Defendants.  Should it be determined that a response to said allegations is required, they are denied.

42.    The allegations of Paragraph 42 of the Complaint are conclusions of law which do not call for answer by these Defendants.  Should it be determined that a response to said allegations is required, they are denied.

### BUMBERSHOOT UNDERWRITERS' SEPARATE DEFENSES

### FIRST SEPARATE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND SEPARATE DEFENSE

The claims asserted in the Complaint are barred by the failure to join all interested, required, necessary and/or indispensable parties or claims to this action, including the Underwriters subscribing to a certain Policy of Insurance and/or Reinsurance designated as Policy No. 507/P06DR01570.

### THIRD SEPARATE DEFENSE

The allegations of liability set forth in the Complaint are premature and/or non-justiciable, as none of the asserted third-party liabilities or suits have been liquidated, reduced to judgment, or otherwise resolved with the third-party claimants.  Therefore, there are no "damages" as defined in the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 to indemnify or "pay on behalf of" PTP.

### FOURTH SEPARATE DEFENSE

PTP has, itself, denied liability and responsibility for and asserted contractual defenses against the claims allegedly asserted against it by Castor Petroleum.  Therefore, even if Castor Petroleum's alleged claims resulted from a covered occurrence and were not otherwise excluded from coverage under Marine Excess Liability ("Bumbershoot") Policy No. 06/663, which is

denied, Castor Petroleum presents no claim for damages as defined in the said Policy of insurance.

## FIFTH SEPARATE DEFENSE

A condition precedent to assertion of any claim for coverage under Marine Excess Liability ("Bumbershoot") Policy No. 06/663, *i.e.,* exhaustion of all applicable underlying insurance, has not been established.  In particular, the full amount of the applicable deductible of $50,000 has not been paid by PTP and the coverage provided by that certain Policy of Insurance and/or Reinsurance designated as Policy No. 507P06DR01570 has not been shown to have been properly exhausted.

## SIXTH SEPARATE DEFENSE

The Primary Marine Comprehensive Liability Policy No. 06/662 contains Pollution Exclusions, and/or other pertinent exclusions, which also limit and preclude coverage available under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 for the claims at issue, which exclusions specify in pertinent part:

* * *

Notwithstanding anything to the contrary contained herein, it is expressly understood and agreed that this insurance does not cover:

Liability for any bodily and/or personal injury to or illness or death of any person or loss of, damage to, or loss of use of property directly or indirectly caused by or arising out of seepage into or onto and/or pollution and/or contamination of air, land, water, and/or any other property and/or any person irrespective of the cause of the seepage and/or pollution and/or contamination, and whenever occurring.

However, this exclusion shall not apply provided that the Assured establishes that all of the following conditions have been met:

A.    The accident was caused by some intervening event, was accidental and was neither expected nor intended by the Assured.

B.    The accident is identified as commencing at a specific time and date during the terms of this insurance.

C.    The accident becomes known to the Assured or the Assured's operating partner or coventurer within 14 days after its commencement, and is reported to Underwriters within 90 days thereafter.

D.    The accident did not result from the Assured's intentional and willful violation of any government statute, rule or regulation.

\* \* \*

THIRD PARTY OIL EXCLUSIONS
'OCCURRENCE' - 1.12.88 (AMENDED)

Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy is subject to the following exclusions and that this policy shall not apply to:

\* \* \*

7.    SEEPAGE, POLLUTION AND CONTAMINATION EXCLUSION

~~Liability for any bodily and/or personal injury to or illness or death of any person or loss of, damage to, or loss of use of property directly or indirectly caused by or arising out of seepage into or onto and/or pollution and/or contamination of air, land, water, and/or any other property and/or person irrespective of the cause of the seepage and/or pollution and/or contamination, and whenever occurring.~~

The words 'loss of, damage to, or loss of use of property' as used in this exclusion include, but are not limited to:

a.    The cost of evaluating and/or monitoring and/or controlling and/or removing and/or nullifying and/or cleaning-up seeping and/or polluting and/or contaminating substances and materials;

b.    Loss of, damage to or loss of use of property directly or indirectly resulting from sub-surface operations of the Assured; and

c.    Removal of, loss of, or damage to sub-surface oil, gas or any other substance or material.

8.    WASTE DISPOSAL OPERATIONS

Liability for any bodily and/or personal injury to or illness or death of any person or damage to or loss of use of property directly or indirectly caused by or arising from:

       a.      Waste or disposal sites which were, or currently are, owned, operated, or used by the Assured or were or currently are utilized by others acting for and/or on behalf of the Assured.

       b.      Disposal, dumping, conveyancing, carriage, or transportation of any seeping and/or polluting and/or contaminating substances or materials or waste substance(s) or waste materials(s) of whatsoever nature; and

       c.      Evaluating and/or monitoring and/or controlling and/or removing and/or nullifying and/or cleaning-up seeping and/or polluting and/or contaminating substances and materials.

The words 'loss of, damage to, or loss of use of property' as used in this exclusion include, but are not limited to:

       a.      The cost of evaluating and/or monitoring and/or controlling and/or removing and/or nullifying and/or cleaning-up seeping and/or polluting and/or contaminating substances and materials;

       b.      Loss of, damage to or loss of use of property directly or indirectly resulting from sub-surface operations of the Assured; and

       c.      Removal of, loss of, or damage to sub-surface oil, gas, or any other substance or material.

* * *

## SEVENTH SEPARATE DEFENSE

The Primary Marine Comprehensive Liability Policy No. 06/662 contains Exclusions which effectively limit and preclude coverage available under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 for the claims at issue, which exclusions specify in pertinent part:

Notwithstanding anything to the contrary contained herein, it is expressly understood and agreed that this insurance does not cover:

       i)      Loss and/or damage to owned, rented, leased or hired equipment, plant, buildings, property or vessels;

* * *

       v)      Loss or damage caused by or resulting from:

* * *

     (c)     Insurrection, rebellion, revolution, civil war, usurped power or action taken by government authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

* * *

     vii)     Liability arising from delay, loss of market and/or consequential loss therefrom.

* * *

## EIGHTH SEPARATE DEFENSE

The Primary Marine Comprehensive Liability Policy No. 06/662 contains Exclusions which effectively limit and preclude coverage available under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 for the claims at issue, which exclusions specify in pertinent part:

* * *

Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy is subject to the following exclusions and that this policy shall not apply to:

* * *

16.    CARE, CUSTODY AND CONTROL

     Any liability whatsoever for damage to or loss of use of:

     a.     Property owned or occupied or rented to the Assured;

     b.     Property used by the Assured; or

     c.     Property in the care, custody and control of the Assured or over which the Assured is for any purpose exercising physical control.

* * *

## NINTH SEPARATE DEFENSE

The Primary Marine Comprehensive Liability Policy No. 06/662 contains Exclusions which effectively limit and preclude coverage available under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 for the claims at issue, which exclusions specify in pertinent part:

* * *

Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy is subject to the following exclusions and that this policy shall not apply to:

* * *

18.    FAILURE TO SUPPLY

~~Any liability arising out of the Assured's failure to supply or from fluctuations in supply of any gas, oil, electricity, chemicals, products, material or service.~~

This exclusion is deleted only as respects power that PTP provides at the Atlantic Terminal (Chiriquí Grande). The deletion of this exclusion is not applicable to power that PTP provides cities or towns or otherwise outside their terminals.

* * *

## TENTH SEPARATE DEFENSE

The Primary Marine Comprehensive Liability Policy No. 06/662 contains Exclusions which effectively limit and preclude coverage available under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 for the claims at issue, which exclusions specify in pertinent part:

* * *

Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy is subject to the following exclusions and that this policy shall not apply to:

* * *

24.    HEALTH HAZARD

Any liability for personal injury and/or Property Damage made by or on behalf of any person or persons directly or indirectly <u>on account of continuous, intermittent or repeated exposure to, ingestion, inhalation, or absorption of</u>, any substance, material, product, waste, emission, noise or environmental disturbance where the Assured is or may be liable as a result of the manufacture, production, extraction, sale, handling, utilization, distribution, disposal or creation by or on behalf of the Assured of such substance, material, product, waste, emission, radioactive substance, noise or environmental disturbance.

\* \* \*

## ELEVENTH SEPARATE DEFENSE

The Primary Marine Comprehensive Liability Policy No. 06/662 contains the following pertinent wording:

9.   OTHER INSURANCE

This insurance shall be primary to other insurance inuring to the benefit of the insured except where perils are also covered under any charterer's liability policy issued to the insured.  In such a case the charterer's policies shall be primary and this policy shall not be applicable.

Claims asserted by PTP herein are or may be covered by insurance other than the Primary Marine Comprehensive Liability Policy No. 06/662, which other insurance should respond as primary and/or as co-insurance with primary, all of which underlying insurance must be, but has not or may not have been properly exhausted before the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 may be called upon to respond to claims by PTP.

## TWELFTH SEPARATE DEFENSE

The Marine Excess Liability ("Bumbershoot") Policy No. 06/663 only grants coverage in excess of coverage provided by Underlying insurance and subject to said Bumbershoot Policy's own written terms, conditions, warranties, and exclusions as follows:

\* \* \*

The Policy shall [pay on behalf of] the Insured with respect to the operations listed in Item 7 of the Declarations for the following (including such expenses

listed in the definition of "Ultimate Net Loss") [as amended by Endorsement No. 3]:

    1.    All Protection and Indemnity risks covered by the underlying Protection and Indemnity Insurance or which are absolutely or conditionally undertaken by The United Kingdom Mutual Steam Ship Assurance Association Limited.

    2.    General average, marine collision liabilities, salvage, salvage charges and related sue and labor arising from any cause whatsoever.

    3.    All other sums which the Insured shall become legally liable to pay as damages on account of:

        a.    personal injuries, including death at any time resulting therefrom, or

        b.    property damage caused by or arising out of each occurrence happening anywhere in the world.

* * *

## THIRTEENTH SEPARATE DEFENSE

The written agreement between the parties, evidenced by Marine Excess Liability ("Bumbershoot") Policy No. 06/663, defines the scope of coverage for "…sums which the Insured shall become legally liable to pay as damages…" in part, as follows:

* * *

H.    "Damages" shall mean the following amounts for which the Insured becomes legally obligated to pay, including those amounts attributable to liability assumed by the Insured under a contract or agreement:

    1.    compromise settlements,

    2.    hospital, medical and funeral charges and

    3.    all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, or interest expenses, for doctors, lawyers, nurses and investigators and other persons and for litigation, settlement adjustment and investigation of claims and suits where same are paid as a consequence of any occurrence covered hereunder, excluding, however, the salaries of the Insured's employees and permanent

general office overhead and also excluding any part of such
expenses for which the Insured is covered by the terms of other
insurance.

* * *

Some or all of the claims against PTP do not seek "damages" as defined above.

## FOURTEENTH SEPARATE DEFENSE

The written agreement between the parties, evidenced by Marine Excess Liability

("Bumbershoot") Policy No. 06/663, further defines the scope of coverage granted by definition

of the pre-requisite for coverage of an "Occurrence":

* * *

L.    "Occurrence" shall mean an event or a continuous or repeated
exposure to conditions which unintentionally causes injury, damages or
destruction during the Policy Period which was unexpected by the Insured. Any
number of such injuries, damage, or destruction resulting from a common cause
or from exposure to substantially the same conditions shall be deemed to result
from one occurrence.

The word "unintentionally" used in the above "occurrence" definitions
shall not apply to claims arising out of personal injuries.

* * *

Some or all of the claims against PTP do not arise from an "occurrence" as defined above.

## FIFTEENTH SEPARATE DEFENSE

The written agreement between the parties, evidenced by Marine Excess Liability

("Bumbershoot") Policy No. 06/663, further defines the scope of coverage granted and/or

excluded by said written Policy, in part, by providing definitions of "Pollution Liability" and

"Property Damage":

* * *

N.    "Pollution Liability" shall mean any liability or expense directly or
indirectly in consequence of the actual or potential discharge, dispersal, release, or
escape of smoke vapors, soot, fumes, acids, alkalis, petroleum products or
derivatives, liquids or gases, waste materials, sewerage or other toxic chemicals,

irritant contaminants or pollutants into or upon land, atmosphere or any watercourse or body of water.

O.    "Property Damage" shall mean physical loss of or direct physical damage to or destruction of tangible property (other than property owned or occupied by the Named Insured).

\* \* \*

## SIXTEENTH SEPARATE DEFENSE

The Marine Excess Liability ("Bumbershoot") Policy No. 06/663 expressly excludes

coverage for the claims at issue asserted by PTP in its Complaint, to wit:

\* \* \*

III. Exclusions

A. This Insurance Does Not Apply To:

\* \* \*

2.    any claims based upon any intentional non-compliance with any statute or regulations except to the extent such claims are for damages occasioned by actual or alleged bodily injury or property damage.

3.    liability of the Insured for any fines or penalties incurred through the intentional act of that Insured.

\* \* \*

5.    any claims made by a national, state or local Government sub-divisions or agencies thereof, unless such claims be for damages occasioned by actual or alleged personal injury (fatal or otherwise) or property damage.

\* \* \*

10.    any liability for, or any loss, damage, injury or expense caused by, resulting from or incurred by reason of any one or more of the following:

a.    capture, seizure, arrest, taking, restraint, detainment, confiscation, preemption, requisition or naturalization, or the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise;

\* \* \*

11.    Any liability for, or any loss, damage, injury or expense caused by, resulting from or incurred by reason of:

a. any obligation to pay fines, penalties or exemplary, or punitive damages including treble damages or any other damages resulting from the multiplication of compensatory damages.

\* \* \*

d. any liability or expense arising out of the ownership, use or operation of drilling rigs, drilling barges, drilling tenders, platforms, flow lines, gathering stations and/or pipe lines, but this exclusion shall not apply to craft serving the foregoing such as crew, supply, or utility boats, tenders, barges or tugs *or to the Insured's operations as a terminal operator and/or owner, or to the trading operations of the Insured*. [as amended by Endorsement No. 2].

\* \* \*

g. pollution liability.

\* \* \*

o. liability arising out of the following activities of the Insured unless coverage is provided in the Underlying Insurance, and then coverage hereunder shall only operate as excess of such coverage:

\* \* \*

 (3) for damage, loss or expense to property of others which occurred while in the care, custody or control of the Insured hereunder;

(4) assumed under contract;

\* \* \*

It is agreed that Exclusions 1ld, 1lg, 1li, 1lj as shown in the policy, shall not apply if coverage is valid and collectible in the underlying insurance as scheduled in this policy, subject to all other items and conditions of this policy. [as amended by Endorsement No. 3].

\* \* \*

## SEVENTEENTH SEPARATE DEFENSE

The assistance and cooperation of PTP and its Underlying Insurers are conditions of

coverage under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 as expressly set

forth therein, to wit:

\* \* \*

B. Assistance and Co-operation

The Company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Insured, but the Company shall have the right and shall be given the opportunity to associate with the Insured or the Insured's Underlying Insurers or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves or appears reasonably likely to involve the Company, in which event the Insured, the Underlying Insurers and the Company shall co-operate in all things in the defense of such claim, suit or proceeding.

\* \* \*

PTP has or may have failed to assist or cooperate with Bumbershoot Underwriters as required under Marine Excess Liability ("Bumbershoot") Policy No. 06/663.

### EIGHTEENTH SEPARATE DEFENSE

The coverage provided by Marine Excess Liability ("Bumbershoot") Policy No. 06/663 is and shall be in excess of and shall not contribute with any other insurance, as specified in said Policy, to wit:

* * *

M. Other Insurance

If other valid and collectible insurance is available to the Insured covering a loss also covered by this Policy, other than insurance that is written to be specifically in excess of the insurance afforded by this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance, either as double insurance or otherwise.

Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of other insurance.

* * *

Claims asserted by PTP herein are or may be covered by insurance to which Marine Excess Liability ("Bumbershoot") Policy No. 06/663 is excess insurance, which underlying insurance must be, but has not or may not have been properly exhausted before the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 may be called upon to respond to claims by PTP.

### NINETEENTH SEPARATE DEFENSE

On or about October 26, 2007, Underwriters Subscribing to Marine Excess Liability ("Bumbershoot") Policy No. 06/663 issued a detailed reservation of rights letter to PTP setting forth and preserving, during further investigation and efforts to adjust PTP's claims, all of the foregoing Policy terms, conditions, warranties, definitions, and exclusions, which defenses are incorporated herein by reference.

### TWENTIETH SEPARATE DEFENSE

Bumbershoot Underwriters deny liability under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 for all damage, remediation, repair, and/or loss of use of the Assured's own property and property owned, rented, leased, or otherwise occupied or in the care custody and control of the Assured as the Assured cannot be legally liable to pay damages to itself.

### TWENTY-FIRST SEPARATE DEFENSE

Bumbershoot Underwriters further aver that the Complaint of PTP is premature because, on information and belief, the government of Panama has not yet completed its investigation of the underlying cause of the February 4, 2007 oil spill. Therefore, it has not yet been determined whether the spill resulted from violations of applicable law or regulations which could preclude coverage for all aspects of the oil spill incident.

### TWENTY-SECOND SEPARATE DEFENSE

Bumbershoot Underwriters further aver that no coverage is provided and same has been properly denied for punitive, exemplary, and/or multiplied damages and for claims and/or damages arising or resulting from "…seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority…" under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 and applicable public policy.

### TWENTY-THIRD SEPARATE DEFENSE

Bumbershoot Underwriters further aver that there is no obligation to defend PTP in respect of claims referenced in PTP's Complaint and/or others arising from the February 4, 2007 oil spill incident under Marine Excess Liability ("Bumbershoot") Policy No. 06/663.

**TWENTY-FOURTH SEPARATE DEFENSE**

Bumbershoot Underwriters further aver that Plaintiff's alleged liability and payments made by or on Plaintiff's behalf are the result of Plaintiff's own fault, neglect, carelessness, inattention to duty, failure to assert defenses to said liability which were known to and/or available to Plaintiff and/or resulted from business decisions of Plaintiff, regardless and in derogation of Plaintiff's duties and interests under the above-referenced Primary and Bumbershoot policies of insurance.

**TWENTY-FIFTH SEPARATE DEFENSE**

Bumbershoot Underwriters contend that the liability alleged by Plaintiff was caused by the fault and/or neglect and/or malpractice and/or malfeasance of other parties and/or third parties, for whom Bumbershoot Underwriters are not responsible.

**TWENTY-SIXTH SEPARATE DEFENSE**

Should any liability be assessed against Bumbershoot Underwriters, which is expressly denied, Bumbershoot Underwriters plead that they each can only be held responsible for their separate percentage shares of any liability determined to lie against Bumbershoot Underwriters, which liability is expressly denied, and that Bumbershoot Underwriters' liability, if any, is in no event joint or solidary, but separate and limited by the terms, exclusions, warranties, conditions, and limits of Marine Excess Liability ("Bumbershoot") Policy No. 06/663.

**TWENTY-SEVENTH SEPARATE DEFENSE**

Bumbershoot Underwriters are without liability herein under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663, as neither a proper, complete or sufficient claim and/or proof of loss in connection with the alleged underlying loss, nor any direct claim by any

other or third party allegedly suffering damage within the policy coverage, has been presented to Bumbershoot Underwriters.

### TWENTY-EIGHTH SEPARATE DEFENSE

Bumbershoot Underwriters are without liability herein under Marine Excess Liability ("Bumbershoot") Policy No. 06/663, as the subject policy only provided indemnity for those sums which PTP, the Assured, shall become legally liable to pay as damages on account of property damage or personal injury caused by or arising out of an occurrence, not payments made in the regular course of business or as a business or public relations expediency by PTP or others acting on its behalf.

### TWENTY-NINTH SEPARATE DEFENSE

Bumbershoot Underwriters affirmatively aver that they acted reasonably and lawfully in the handling of the claims at issue based on the information submitted and the policy provisions.

### THIRTIETH SEPARATE DEFENSE

Plaintiff's claims are barred by the terms, conditions, exclusions and other provisions contained in the Marine Excess Liability ("Bumbershoot") Policy No. 06/663, and those to which the foregoing policy follows form.

### THIRTY-FIRST SEPARATE DEFENSE

Plaintiff's claims are barred by Plaintiff's failure to comply with the notice conditions contained in the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 and/or by the Plaintiff's failure to provide notice as required in the Primary Marine Comprehensive Liability Policy No. 06/662 in accordance with the Pollution Exclusions, which also limit and preclude

coverage available under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 for the claims at issue.

### THIRTY-SECOND SEPARATE DEFENSE

Plaintiff's claims are barred to the extent that Plaintiff negligently or intentionally failed to disclose, concealed, or made false, fraudulent, or misleading representations in procuring Marine Excess Liability ("Bumbershoot") Policy No. 06/663 from the Bumbershoot Underwriters.

### THIRTY-THIRD SEPARATE DEFENSE

Plaintiff has failed to set forth its claims with sufficient particularity as to enable Bumbershoot Underwriters to determine all applicable separate defenses. Bumbershoot Underwriters, therefore, reserve their rights to assert any additional defenses that may be applicable, to withdraw any defenses that are found to be inapplicable and to more specifically assert separate defenses once the precise nature of the claims is ascertained through discovery and further investigation.

### PRAYER FOR RELIEF

**WHEREFORE**, Bumbershoot Underwriters respectfully request that this Court grant judgment as appropriate in their favor as follows:

a.  Dismissing all claims against Bumbershoot Underwriters with prejudice, and award them all costs, disbursements and attorneys' fees with respect to this action;

b.  That Bumbershoot Underwriters are not obligated to defend and/or reimburse defense costs or to indemnify Plaintiff in connection with the claims at issue;

c.  That Plaintiff is not entitled to the relief requested in the Complaint; and

    d.      That this Court grant such other and further relief as this Court may deem just, proper and equitable.

Dated: February 14, 2008

                                            Respectfully submitted,

                                            RIVKIN RADLER LLP

                      By:             /s/

                                            Gary D. Centola [GC-3478]
                                          Michael A. Kotula [MK-7455]
                                          926 RexCorp Plaza, West Tower
                                          Uniondale, New York 11556-0926
                                          (516) 357-3000

                                          Attorneys for Defendants
                                          HOUSTON CASUALTY COMPANY,
                                          NATIONAL LIABILITY & FIRE INSURANCE
                                          COMPANY A/K/A NATIONAL FIRE &
                                          LIABILITY INSURANCE COMPANY,
                                          LIBERTY MUTUAL INSURANCE COMPANY,
                                          GREAT AMERICAN INSURANCE COMPANY
                                          OF NEW YORK, INDEMNITY INSURANCE
                                          COMPANY OF NORTH AMERICA, AND
                                          CONTINENTAL INSURANCE COMPANY

Of counsel:

Jay Lonero
R. Jeffrey Bridger
LARZELERE PICOU WELLS
    SIMPSON LONERO, LLC
Two Lakeway Center, Suite 1100
3850 N. Causeway Blvd.
Metairie, Louisiana  70002
(504) 834-6500

## **JURY DEMAND**

Defendants, Houston Casualty Company, National Liability & Fire Insurance Company a/k/a National Fire & Liability Insurance Company, Liberty Mutual Insurance Company, Great American Insurance Company of New York, Indemnity Insurance Company of North America, and Continental Insurance Company, hereby demand trial by jury as to all issues so triable.

Dated: February 14, 2008

RIVKIN RADLER LLP

By: _____/s/_____

Gary D. Centola [GC-3478]
Michael A. Kotula [MK-7455]
926 RexCorp Plaza, West Tower
Uniondale, New York 11556-0926
(516) 357-3000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of February, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service.  I further certify that I have served a copy of the foregoing pleading on all parties to this proceeding not registered for electronic service, by e-mailing, faxing, and/or mailing the same by United States mail, properly addressed and first class postage prepaid.


_____/s/_____
Michael A. Kotula