UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETROTERMINAL DE PANAMA, S.A., <br><br> Plaintiff <br><br> VERSUS <br><br> HOUSTON CASUALTY COMPANY, NATIONAL LIABILITY & FIRE INSURANCE COMPANY a/k/a NATIONAL FIRE & LIABILITY INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, and CONTINENTAL INSURANCE COMPANY <br><br> Defendants | CIVIL ACTION NO.: 08 CV 00547 <br><br> DISTRICT JUDGE: RAKOFF <br><br> **AGREEMENT AND ORDER** <br><br>  |

WHEREAS, Petroterminal de Panama, SA ("PTP") is the named assured under certain policies of insurance, including but not limited to those designated as Marine Comprehensive Liability Insurance Policy No. 06/662, with limits of $1Million indemnity and $1Million costs ("the Primary Policy"), and Bumbershoot/Excess Marine Liability Policy No. 06/663, with a single aggregate limit of $45Million excess of $1Million ("the Bumbershoot Policy");

WHEREAS, PTP has incurred and is incurring certain claims, expenses, costs, and liabilities after a certain 4 February 2007 Oil Spill at PTP's Chiriqui Grande Atlantic terminal facility (the "Oil Spill");

1

WHEREAS, certain claims, demands, and law suits have been filed by numerous individual and community plaintiffs against PTP and others in the Courts of Panama, claiming, in part, damages for personal injuries and property damage resulting from the Oil Spill. . These Civil Suits include the following:

1. Comunicades de Cayo de Agua, et al v. Unicom Management Service, et al (First Maritime Tribunal);
2. Eibar Leonardo Santiago Nuñez v. Petroterminal de Panama, S.A., et al (First Maritime Tribunal);
3. Comunidades Indígenas de Chiriqui Grande Dayra No. 1 y No. 2, et al v. Petroterminal de Panama, S.A., et al (First Maritime Tribunal);
4. Unión de Pescadores Artesanales Bocatoreños v. Unicom Management Service, et al (First Maritime Tribunal);
5. Virgilio Palacio Martinez, et al v. Petroterminal de Panama, S.A. (First Maritime Tribunal);
6. Alicia Gonzalez Valdez, et al v. Petroterminal de Panama, S.A., et al (Second Maritime Tribunal);
7. Virgilio Palacio Martinez, et al v. Petroterminal de Panama, S.A. (Eleventh Civil Circuit Court of the First Judicial District of Panama);

(the "Civil Suits")

WHEREAS, Castor Petroleum Ltd. ("Castor") has instituted a lawsuit against PTP, captioned "Castor Petroleum Ltd. v. Petro Terminal De Panama, S.A.," Index No.08600243, filed in the Supreme Court of the State of New York, County of New York, in which Castor seeks damages for losses allegedly related to the Oil Spill (the "Castor Suit"); and

WHEREAS, PTP and the insurers that subscribed the Bumbershoot Policy (collectively "Bumbershoot Underwriters") wish to resolve and reserve certain issues within the above-captioned litigation concerning their respective rights and obligations under the Bumbershoot Policy, in regard to the Civil Suits and the Castor Suit.

NOW, THEREFORE, it is hereby AGREED and STIPULATED, by and between PTP and Bumbershoot Underwriters as follows:


I. Bumbershoot Underwriters' Agreed Obligation to Indemnify:

Bumbershoot Underwriters shall promptly indemnify any liability that PTP incurs to one or more plaintiffs in any of the Civil Suits, irrespective of whether that liability takes the form of a judgment or settlement, ("Bumbershoot Underwriters' Agreed Obligation to Indemnify"), subject to the following terms and reservations:

A.   Bumbershoot Underwriters' Obligation to Indemnify is subject to the applicable liability limits of the Bumbershoot Policy and the requirement that PTP cooperate and permit

Bumbershoot Underwriters the opportunity to associate with PTP in the defense, negotiation, and/or settlement of all claims for which PTP seeks coverage.

B.    A liability incurred by PTP by reason of a settlement shall not be within Bumbershoot Underwriters' Agreed Obligation to Indemnify unless such settlement shall have been approved in advance by Bumbershoot Underwriters; provided, however, that Bumbershoot Underwriters' approval of a settlement proposed by PTP shall not be unreasonably withheld.

C.    PTP and Bumbershoot Underwriters agree that future liabilities which may be incurred by PTP on the following legal theories or bases are not within Bumbershoot Underwriters' Agreed Obligation to Indemnify under this Agreement, and that in respect of any such liabilities ("Non-Agreed Liabilities") PTP and Bumbershoot Underwriters reserve their rights, respectively, to seek coverage and to dispute coverage obligations if and when PTP actually incurs such Non-Agreed Liabilities:

  1.    Liability for loss incurred by one or more plaintiff(s) in a Civil Suit by reason of decrease in tourism attributable to the Oil Spill;

  2.    Liability for bodily injury or property damage sustained by any of the plaintiff(s) while in the course and scope of employment with PTP.

  3.    Liability for loss of use of property, loss of income, or business interruption.

  4.    Liability to any governmental entity that is a plaintiff in a Civil Suit, except to the extent that such claims are for physical damage to tangible property sustained by such governmental entity.

  5.    Liability to one or more plaintiff(s) in a Civil Suit for damage to property owned, occupied, rented, or under the control of PTP at the time of the damage.

  6.    Liability for loss incurred by one or more plaintiff(s) in a Civil Suit by reason of seizure, confiscation, or order of any government or public authority.

  7.    Liability for loss incurred due to waste disposal or disposal of oil recovered in the cleanup of the Oil Spill; or from the storage and/or failure properly to dispose of oil recovered in the cleanup of the Oil Spill or from the use of dispersants, such as Corexit, or other chemical agents to disperse or remove or remedy the oil spilled in the Oil Spill.

  8.    Liability for loss incurred by one or more plaintiff(s) in a Civil Suit by reason of alleged injuries, illnesses, and/or conditions that were not known or had not manifested at the time of filing such Civil Suit, and/or claims of mental or emotional distress and/or fear of such injuries, illnesses, and/or conditions, where PTP is or may be liable as a result of the handling of seeping and/or polluting and/or contaminating substances and materials or waste.

9.  Liability for loss incurred by one or more plaintiff(s) in a Civil Suit by reason of delay, loss of market, consequential loss, failure to supply any gas, oil, or other products, materials, or service(s).

10. Liability that was assumed by PTP under a contract.

11. Liability in a Civil Suit for injunctive relief, exemplary, multiplied, or punitive damages and/or fines or penalties.

12. In the event of and/or with respect to circumstances or liabilities within the Civil Suits which may hereafter arise, whether by the filing of additional pleadings in the Civil Suits, material amendments to the Civil Suits, or adjudications in the Civil Suits, the parties further reserve, to the extent not inconsistent with this Agreement, all rights and defenses which they may have or to which they may be entitled.

13. PTP and Bumbershoot Underwriters agree that both Primary and Bumbershoot Underwriters subscribing to their respective policies of insurance reserve their rights to assert that their liabilities are several, not joint, and that each subscribing Primary or Bumbershoot Underwriter's liability shall be only for such Primary or Bumbershoot Underwriter's agreed share of liability as stated in the respective policies, and not one for the other, in all circumstances, including insolvency.

D.  Bumbershoot Underwriters shall pay a liability incurred by PTP that is within Bumbershoot Underwriters' Agreed Obligation to Indemnify within 30 days of receipt of a judgment or settlement agreement embodying, representing or memorializing such liability.

II. Bumbershoot Underwriters' Agreed Obligation to Pay Costs and Expenses:

A.  PTP and Bumbershoot Underwriters acknowledge that agreement has been reached amongst PTP, Bumbershoot Underwriters, and the insurers that subscribed and made undertakings to PTP in the Primary Policy (the "Primary Underwriters"), wherein Primary Underwriters and Bumbershoot Underwriters, subject to all terms and limitations of that agreement (the "Defense Costs Agreement"), agree to the payment of fees, charges, costs, and expenses incurred by PTP for doctors, lawyers, nurses, and investigators, and other persons engaged in PTP's defense in respect of the Civil Suits and in respect of the Castor Suit, and for litigation, settlement, adjustment, and investigation of the claims against PTP in the Civil Suits and the Castor Suit (excluding the salaries of PTP employees and permanent general office overhead), provided in all cases that such fees, charges, costs, and expenses are documented, reasonable, and necessary ("PTP's Defense Expenses").

B.  A copy of the Defense Costs Agreement is annexed hereto as an Exhibit, and is expressly incorporated into this Agreement by reference.

C.  Bumbershoot Underwriters' undertakings to PTP in the Defense Costs Agreement shall be enforceable by the Court in this action as if they had been elaborated in full in this Agreement.

III.  The parties acknowledge and agree that this Agreement and Stipulation does not supersede or reform the Bumbershoot Policy, which remains totally in effect including, but not limited to, all Limits of Liability.

Considering the foregoing agreement of the parties and upon review of the record herein,

IT IS SO AGREED AND STIPULATED:

Dated: 4/24/08   By: _____

DICKSTEIN, SHAPIRO, LLP

Stephen Dvorkin [SD0341]
John Winsbro
1177 Avenue of the Americas
New York, NY  10036

ATTORNEYS FOR PLAINTIFF,
PETROTERMINAL DE PANAMA, S.A.

RIVKIN RADLER LLP

Dated: 4/24/08   By: _____

Gary D. Centola [GC-3478]
Michael A. Kotula [MK-7455]
926 RexCorp Plaza, West Tower
Uniondale, New York 11556-0926
(516) 357-3000

ATTORNEYS FOR DEFENDANTS,
HOUSTON CASUALTY COMPANY,
NATIONAL LIABILITY & FIRE INSURANCE
COMPANY A/K/A NATIONAL FIRE &
LIABILITY INSURANCE COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY,
GREAT AMERICAN INSURANCE COMPANY
OF NEW YORK, INDEMNITY INSURANCE
COMPANY OF NORTH AMERICA, AND
CONTINENTAL INSURANCE COMPANY

5

Of Counsel:

Jay Lonero
R. Jeffrey Bridger
LARZELERE PICOU WELLS
  SIMPSON LONERO, LLC
Two Lakeway Center, Suite 1100
3850 N. Causeway Blvd.
Metairie, Louisiana 70002
(504) 834-6500

IT IS ORDERED, that this Stipulation and Agreement between the parties shall, until further order of this Court, govern these proceedings in respect of all claims made herein regarding the Panama Civil Suits as described above and PTP's Defense Expenses, as described above.

IT IS SO ORDERED:

_____
U.S. DISTRICT JUDGE

4-24-08

6

### AGREEMENT BETWEEN PETROTERMINAL DE PANAMA, SA, PRIMARY UNDERWRITERS, AND BUMBERSHOOT UNDERWRITERS REGARDING DEFENSE EXPENSES

WHEREAS, Petroterminal de Panama, SA ("PTP") is the named assured under certain policies of insurance, including but not limited to those designated as Marine Comprehensive Liability Insurance Policy No. 06/662, with limits of $1Million indemnity and $1Million costs ("the Primary Policy"), and Bumbershoot/Excess Marine Liability Policy No. 06/663, with a single aggregate limit of $45Million excess of $1Million ("the Bumbershoot Policy");

WHEREAS, PTP has incurred and is incurring certain claims, expenses, costs, and liabilities after a certain 4 February 2007 Oil Spill at PTP's Chiriqui Grande Atlantic terminal facility (the "Oil Spill");

WHEREAS, certain claims, demands, and law suits have been filed by numerous individual and community plaintiffs against PTP and others in the Courts of Panama, claiming, in part, damages for personal injuries and property damage resulting from the Oil Spill. These Civil Suits include the following:

1. Comunidades de Cayo de Agua, et al v. Unicom Management Service, et al;
2. Eibar Leonardo Santiago Nuñez v. Petroterminal de Panama, S.A., et al;
3. Comunidades Indígenas de Chiriqui Grande Dayra No. 1 y No. 2, et al v. Petroterminal de Panama, S.A., et al;
4. Unión de Pescadores Artesanales Bocatoreños v. Unicom Management Service, et al;
5. Virgilio Palacio Martinez, et al v. Petroterminal de Panama, S.A.;
6. Alicia Gonzalez Valdez, et al v. Petroterminal de Panama, S.A., et al;
7. Virgilio Palacios Martinez, et al v. Petroterminal de Panama, S.A.;

(the "Civil Suits")

WHEREAS, Castor Petroleum Ltd. ("Castor") has instituted a lawsuit against PTP, captioned "Castor Petroleum Ltd. v. Petro Terminal De Panama, S.A.," Index No.08600243, filed in the Supreme Court of the State of New York, County of New York, in which Castor seeks damages for losses allegedly related to the Oil Spill (the "Castor Suit"); and

WHEREAS, PTP, and the insurers that subscribed the Primary Policy (collectively "Primary Underwriters"), and the insurers that subscribed the Bumbershoot Policy (collectively "Bumbershoot Underwriters") wish to agree to the resolution of certain issues regarding defense obligations as they may affect the Civil Suits and the Castor Suit.

NOW, THEREFORE, it is hereby AGREED, by and between PTP, Primary Underwriters, and Bumbershoot Underwriters as follows:

I.  Primary and Bumbershoot Underwriters' Agreed Obligation to Pay Costs and Expenses:

Primary Underwriters and Bumbershoot Underwriters shall pay or reimburse, in accordance with the following provisions, fees, charges, costs, and expenses incurred by PTP for doctors, lawyers, nurses and investigators, and other persons engaged in PTP's defense in respect of the Civil Suits, and in respect of the Castor Suit, and for litigation, settlement, adjustment and investigation of the claims against PTP in the Civil Suits, and the Castor Suit (excluding the salaries of PTP employees and permanent general office overhead), provided in all cases that such fees, charges, costs, and expenses are documented, reasonable, and necessary ("PTP's Defense Expenses"):

A.  In respect of the Civil Suits:

   1.  Primary Underwriters shall within 30 days and Bumbershoot Underwriters shall within 21 days of the date of this Agreement reimburse PTP's Defense Expenses in respect of the Civil Suits that were previously incurred and submitted to Primary Underwriters by PTP in February 2008.

   2.  Primary Underwriters and Bumbershoot Underwriters shall pay 100% of PTP's Defense Expenses that are incurred in the future in respect of the Civil Suits, and 100% of PTP's Defense Expenses in respect of the Civil Suits that have been incurred but have not been submitted to Primary Underwriters and Bumbershoot Underwriters prior to the signing of this Agreement in respect of the Civil Suits, within 30 days of submission of documentation for such Defense Expenses to Primary Underwriters and Bumbershoot Underwriters; provided, however, that in the event and upon the occurrence of the exhaustion of the $1 Million limit applicable to the Cost Clause of the Primary Policy, Bumbershoot Underwriters alone shall thereafter, and until the conclusion of the Civil Suits, exhaustion of Bumbershoot Policy limits, or a coverage determination as set forth in paragraph A(3), below, pay 100% of PTP's Defense Expenses in respect of the Civil Suits, subject to the Limits of the Bumbershoot Policy.

   3.  Primary Underwriters and Bumbershoot Underwriters reserve the right, in the event that material amendments or adjudications occur in the Civil Suits, to seek a determination in the future that some or all of the Civil Suits do not present claims within the coverage of the Primary and/or Bumbershoot Policies and that no Defense Expense reimbursement or indemnity payment is owed from the point of such determination forward by either Primary Underwriters or Bumbershoot Underwriters.

B.  In respect of the Castor Suit:

   1.  Primary Underwriters and Bumbershoot Underwriters shall within 30 days of the date of this Agreement reimburse, as documented and appropriate, 50% of PTP's Defense Expenses, in respect of the Castor Suit, that were previously incurred and submitted to Primary Underwriters by PTP.

   2.  Primary Underwriters and Bumbershoot Underwriters shall pay 50% of PTP's Defense Expenses that are incurred in the future in respect of the Castor Suit, and 50% of PTP's Defense Expenses in respect of the Castor Suit that have been incurred but have not been submitted to Primary Underwriters and Bumbershoot Underwriters prior to the signing of this

Agreement; provided, however, that in the event and upon the occurrence of the exhaustion of the $1 Million limit applicable to the Cost Clause of the Primary Policy, Bumbershoot Underwriters shall thereafter, and until the conclusion of the Castor Suit, exhaustion of Bumbershoot Policy limits, or a coverage determination as set forth in paragraph B(3), below, pay 50% of PTP's Defense Expenses in respect of the Castor Suit, subject to the Limits of the Bumbershoot Policy.

3.  All parties hereto agree that they reserve all rights and defenses to seek a determination of coverage rights and obligations in respect of the Castor Suit, after that suit is concluded, under the Primary and/or Bumbershoot Policy(ies), and all parties further agree that the prevailing party(s) in respect of such coverage determination will be reimbursed by the adverse party(s) for the portion of the Castor Suit Defense Expenses such prevailing party(s) shall have paid.

II. The parties acknowledge and agree that this Agreement does not supersede or reform the Primary Policy or the Bumbershoot Policy, which remain totally in effect including, but not limited to, all Limits of Liability.

III. The parties acknowledge and agree that this Agreement may be referenced in or attached to an Agreement and Order to be filed in certain litigation now pending between PTP and Bumbershoot Underwriters and may form the basis for an Order of the Court with regard to the respective rights and obligations of PTP and Bumbershoot Underwriters.

IV. Primary Underwriters and Bumbershoot Underwriters advise that they have agreed to pay 100% of PTP's Defense Expenses in respect of the Civil Suits and 50% of PTP's Defense Expenses in respect of the Castor Suit, subject to the above terms and limitations, and they have agreed to a method of allocation of Defense Expenses between themselves. In the event of the failure of Primary Underwriters and/or Bumbershoot Underwriters to comply with this Agreement, PTP, Primary Underwriters, and/or Bumbershoot Underwriters reserve their rights to enforce this Agreement through judicial proceedings or otherwise.

IT IS SO AGREED;

DICKSTEIN, SHAPIRO, LLP

Dated: 4/24/08    By: _____
Stephen Dvorkin
John Winsbro
1177 Avenue of the Americas
New York, NY 10036
(212) 277-6570

ATTORNEYS-IN-FACT FOR
PETROTERMINAL DE PANAMA, S.A.

3

LARZELERE PICOU WELLS SIMPSON LONERO, LLC

Dated: 4/24/08   By: _____/s/_____
Jay M. Lonero
R. Jeffrey Bridger
Two Lakeway Center, Suite 1100
3850 N. Causeway Boulevard
Metairie, Louisiana 70002
(504) 834-6500

ATTORNEYS-IN-FACT FOR
HOUSTON CASUALTY COMPANY,
NATIONAL LIABILITY & FIRE INSURANCE
COMPANY A/K/A NATIONAL FIRE &
LIABILITY INSURANCE COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY,
GREAT AMERICAN INSURANCE COMPANY
OF NEW YORK, INDEMNITY INSURANCE
COMPANY OF NORTH AMERICA, AND
CONTINENTAL INSURANCE COMPANY


MENDES & MOUNT, LLP

Dated: 4/24/08   By: _____/s/_____
Stephen V. Rible
750 Seventh Avenue
New York, NY 10019-6829
(212) 261-8007

ATTORNEYS-IN-FACT FOR FIREMAN'S FUND
INSURANCE COMPANY, GREAT AMERICAN
INSURANCE COMPANY OF NEW YORK,
INDEMNITY INSURANCE COMPANY OF NORTH
AMERICA, INC., AND AMERICAN HOME
ASSURANCE COMPANY

4