DICKSTEIN SHAPIRO, LLP
By:    STEPHEN A. DVORKIN (SD0341)
         JOHN WINSBRO
Attorneys for the Plaintiff, Petroterminal de Panama, S.A.
1137 Avenue of the Americas
New York, New York 10036
Telephone: (212) 277-6800
------------------------------------------------------------------------ x

PETROTERMINAL DE PANAMA, S.A.,                    :

                              Plaintiff,          :

            - against –                           :          NOTICE OF MOTION

HOUSTON CASUALTY COMPANY, NATIONAL                :          08 CV 00547 (JSR)
NATIONAL LIABILITY & FIRE INSURANCE
COMPANY a/k/a NATIONAL FIRE & LIABILITY           :
INSURANCE COMPANY, LIBERTY MUTUAL
INSURANCE COMPANY, GREAT AMERICAN                 :
INSURANCE COMPANY OF NEW YORK,
INDEMNITY INSURANCE COMPANY OF NORTH              :
AMERICA, and CONTINENTAL INSURANCE
COMPANY,                                          :

                              Defendants.         :

------------------------------------------------------------------------ x

      **PLEASE TAKE NOTICE**, that the plaintiff, Petroterminal de Panama, S.A.

("Plaintiff"), on its accompanying Memorandum of Law, and the accompanying affidavits of

Stephen A. Dvorkin and John Winsbro, both sworn July 25, 2008, will move this Court, pursuant

to Fed. Rs. Civ. P. 26(a) and 37, on August 13, 2008, at 2 o'clock p.m. of that day, at the United

States Courthouse, 500 Pearl Stret, New York, New York, in the courtroom of the Hon. Jed S.

Rakoff, United States District Judge, for an order imposing on each and all of the defendants in

this action the following sanctions by reason of their failure to comply with discovery

requirements:

      (a)     granting PTP default judgment on the claims in PTP's Amended
                Complaint, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi) and 37(c)(1)(C); or,
                alternatively,

(b)    striking all of the thirty-three affirmative defenses set forth in Defendants' Answer, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(iii) and 37(c)(1)(C); and alternatively (or additionally)

(c)    barring Defendants' introduction at trial of the testimony of all witnesses identified in Defendants' untimely Rule 26(a) disclosures, pursuant to Fed. R. Civ. P. 37(c)(1); and additionally

(d)    awarding PTP, and requiring Defendants' to reimburse PTP for, the attorneys' fees and expenses it has incurred and will incur in bringing on and seeking the adjudication of this motion, pursuant to Fed. R. Civ. P. 37(c)(1)(A).

Pursuant to the direction of the Court, defendants' papers in opposition to the within motion are required to be served and filed no later than August 1, 2008.

Dated: New York, New York
      July 25, 2008

Respectfully submitted,

DICKSTEIN SHAPIRO, LLP

By: _____
    STEPHEN A. DVORKIN (SD0341)
    JOHN P. WINSBRO
    1177 Avenue of the Americas
    New York, New York 10036
    Telephone: (212) 277-6800

    Attorneys for the Plaintiff,
    Petroterminal de Panama, S.A.

DICKSTEIN SHAPIRO, LLP
STEPHEN A. DVORKIN (SD-0341)
JOHN P. WINSBRO (JW-5211)
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 277-6500

Attorneys for the Plaintiff,
Petroterminal de Panama, S.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------- x
                                                  :
PETROTERMINAL DE PANAMA, S.A.,                    :     08 CV 00547 (JSR)
                                                  :
                              Plaintiff,          :
                                                  :
          – against –                             :
                                                  :
HOUSTON CASUALTY COMPANY, NATIONAL                :
LIABILITY & FIRE INSURANCE COMPANY a/k/a          :
NATIONAL FIRE & LIABILITY INSURANCE              :
COMPANY, LIBERTY MUTUAL INSURANCE                 :
COMPANY, GREAT AMERICAN INSURANCE                 :
COMPANY OF NEW YORK, INDEMNITY                    :
INSURANCE COMPANY OF NORTH AMERICA, and           :
CONTINENTAL INSURANCE COMPANY,                    :
                                                  :
                              Defendants.         :
                                                  :
-------------------------------------------------------------------- x
```

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR IMPOSITION OF DISCOVERY SANCTIONS ON DEFENDANTS

The plaintiff, Petroterminal de Panama, S.A. ("PTP"), respectfully submits this

memorandum in support of its motion for the imposition of sanctions on the defendant insurance

companies ("Defendants")[1], pursuant to Fed. R. Civ. P. 37(c), by reason of Defendants' failure to

---

[1] Defendants are Houston Casualty Company; National Liability & Fire Insurance Company (a/k/a National Fire & Liability Insurance Company); Liberty Mutual Insurance Company; Great

provide the disclosures required by Rule 26(a)(1) for a period of four months after those disclosures were due – in spite of PTP's repeated requests, and notwithstanding Defendants' repeated promises.

## PRELIMINARY STATEMENT

The deadline for filing and service of Defendants' Fed. R. Civ. P. 26(a) "required disclosures" (the "Required Disclosures" or "Disclosures") was **March 13, 2008**. PTP repeatedly reminded Defendants of their obligation to make the Required Disclosures – once in March and on two separate occasions in May 2008 – and on all occasions was assured that service of the Required Disclosures was imminent. *See* accompanying Affidavit of Stephen A. Dvorkin, dated July 25, 2008 ("Dvorkin Aff.") ¶ 2. Defendants finally served inadequate Disclosures on **July 14, 2008** – but only after the Court had directed them to do so, in the course of the very conference call in which PTP requested leave to make the present motion. Dvorkin Aff. ¶¶ 3, 18.

Defendants knew that their Required Disclosures were due and have no conceivable excuse for failing to file and serve their Required Disclosures until four months after the deadline for filing and service had passed. Moreover, Defendants have evidenced the same disregard for their other discovery obligations. Even after PTP granted them an extension of time to respond to PTP's document requests and interrogatories, Defendants failed to respond in any way by the agreed deadline and never responded until they were ordered to do so some sixteen days later.

Nor can there be any question that, by flouting their discovery obligations, Defendants have materially delayed the time available to PTP for the preparation of its case. Defendants have advanced no fewer than thirty-three affirmative defenses to PTP's claims in this lawsuit.

---

American Insurance Company of New York; Indemnity Insurance Company of North America; and Continental Insurance Company.

320141.03

Many of those defenses are based on allegations for which the supporting information, if any, resides solely or primarily with Defendants. The Court has ordered the parties to be ready for a trial of this matter by no later than October 20, 2008 (the "Trial-Ready Date"). A total of seven months was thus available to the parties for discovery and trial preparation between the date when Defendants' Required Disclosures were due (March 13, 2008) and the Trial-Ready Date. *__More than half of that time had elapsed before Defendants served their version of the Required Disclosures.__*

Stiff sanctions under Fed. R. Civ. P. 37(c) are warranted where, as here, the derelict party lacks substantial justification for the failure to file and serve Required Disclosures and cannot show that the failure was harmless. PTP therefore seeks an Order of the Court:

(a) granting PTP default judgment on the claims in PTP's Amended Complaint, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi) and 37(c)(1)(C); or, alternatively,

(b) striking all of the thirty-three affirmative defenses set forth in Defendants' Answer, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(iii) and 37(c)(1)(C); and

(c) barring Defendants' introduction at trial of the testimony of all witnesses identified in Defendants' untimely Rule 26(a) disclosures, pursuant to Fed. R. Civ. P. 37(c)(1); and

(d) awarding PTP, and requiring Defendants' to reimburse PTP for, the attorneys' fees and expenses it has incurred and will incur in bringing on and seeking the adjudication of this motion, pursuant to Fed. R. Civ. P. 37(c)(1)(A).

## **BACKGROUND FACTS**

Defendants are insurance companies that subscribe to a "bumbershoot" insurance policy that promises to indemnify PTP against liabilities (excess of primary policy limits) for bodily injury and property damage that occurred during the December 1, 2006 to December 1, 2007 "policy period" (the "Bumbershoot Policy").

PTP requested indemnity under the Bumbershoot Policy for liabilities and costs of defense incurred and to be incurred by PTP in connection with an oil spill that occurred at its Chiriqui Grande, Panama terminal on February 4, 2007 (the "Spill," and "PTP's Spill-Related Liabilities"). On October 26, 2007, Defendants sent PTP a letter denying indemnity obligations in respect of PTP's Spill-Related Liabilities. PTP instituted this action on January 22, 2008. *See* Dvorkin Aff., ¶¶ 6-8.

Defendants' Answer and Jury Demand, dated February 14, 2008 [Exhibit A ("Answer") [2]], denies PTP's claim for insurance coverage under the Bumbershoot Policy in respect of PTP's Spill-Related Liabilities, and asserts thirty-three defenses to PTP's claims – many of which are divided into separate parts that amount to additional defenses. Some of what are denominated as "defenses" in Defendants' Answer are not strictly affirmative defenses (in the acknowledgment-and-avoidance vein), but rather take issue with PTP's ability to prove its prima facie case for coverage – such as, *e.g.*, the "defense" alleging that PTP failed even to assert a proper claim. *See* Exhibit A, Twenty-Seventh Defense. Among Defendants' other defenses are contentions that PTP should be denied coverage:

> (a) "to the extent [it] . . . made false, fraudulent or misleading statements in procuring [the Policy]" [*see* Exhibit A, Thirty-Second Defense]; and

> (b) because PTP's relevant liabilities were in fact caused "by the fault and/or neglect and/or malpractice and/or malfeasance of other parties . . . for whom Bumbershoot Underwriters are not responsible" [*see* Exhibit A, Twenty-Fifth Defense].

As may readily be seen, all of the foregoing defenses – and others of Defendants' defenses – are at least partially fact-dependent. PTP is unaware of any facts that would support

---

[2] Any citation *infra* to an "Exhibit" refers to the corresponding exhibit to the Dvorkin Affidavit.

exculpation of Defendants from their obligations to indemnify PTP's Spill-Related Liabilities on any of the foregoing grounds, and is, and will be, entirely reliant on discovery to ascertain Defendants' bases for asserting such defenses. Defendants did not, in their Answer, or at any time since, particularize or support the allegations set forth in the foregoing defenses, or in any of the other defenses pled in their Answer – and failed and refused, for a period of four months, even to provide the names of witnesses likely to have discoverable information that Defendants might use in support of those defenses, in clear violation of the requirements of Fed. R. Civ. P. 26(a)(1)(A).

PTP filed and served its Required Disclosures on the March 13, 2008 deadline[3] but Defendants did not. *See* Dvorkin Aff. ¶¶ 10-12, Ex. B. Immediately following the March 20, 2008 Scheduling Conference in this case, PTP's counsel raised this matter with Defendants' counsel, who provided assurances that the Disclosures would be made shortly. *See* Dvorkin Aff. ¶ 13; Affidavit of John P. Winsbro, dated July 25, 2008 ("Winsbro Aff.") 2.

On May 12, 2008, one of PTP's counsel, John Winsbro, again broached the matter of Defendants' overdue Disclosures, this time in a telephone call to one of Defendants' attorneys, Jeffrey Bridger, Esq., who stated that he would check on the status of the Disclosures. Winsbro

---

[3] The Fed. R. Civ. P. 16(b)) scheduling conference in this matter was held on March 20, 2008. *See* Dvorkin Aff., ¶ 13. This development triggered the parties' obligation to convene a Fed. R. Civ. P. 26(f) conference for the development of a proposed discovery plan and to file and serve their Required Disclosures. Pursuant to Fed. R. Civ. P. 26(f)(i), the parties were required to hold the 26(f) conference "by at least 21 days" before the scheduling conference, that is, by February 28, 2008. And, per Fed. R. Civ. P. 26 (a) (i) (C), the parties were required to file and serve their Disclosures "at or within 14 days after the parties' Rule 26(f) conference," that is, by March 13, 2008.

The deadline for filing and service of Initial Disclosures may be changed or extended if "a different time is set by stipulation or court order" or if "a party objects during the [Fed. R. Civ. P. 26(f)] conference that Initial Disclosures are not appropriate in this action and states the objection in the proposed discovery plan." Fed. R. Civ. P. 26 (a)(i)(C). Neither exception is applicable here.

Aff. ¶ 3, Ex. ¶ A thereto.  Mr. Winsbro followed-up with an email reminder to Mr. Bridger later

on May 12 but heard nothing from Mr. Bridger either on that or the following day.  *Id.* ¶ 4 and

Ex. B.  Accordingly, on the morning of May 14, 2008, Mr. Winsbro forwarded another reminder

to Mr. Bridger in the form of the relevant email thread.  *See* Winsbro Aff. ¶ 4 and Exhibit B.  In

an e-mail sent later that morning, Mr. Bridger represented that a draft (at least) of Defendants'

Required Disclosures already existed – but that Mr. Bridger was "re-doing them to go out, I

expect, this evening."  *Id.* ¶ 5 and Ex. C.  Contrary to this representation, Defendants did not

serve the Required Disclosures that evening, or at any time during *the seven-week period that*

*followed.*  Dvorkin Aff. ¶¶ 14-16; Winsbro Aff. ¶¶ 5-6.

    Nor was this the only occasion when Defendants ignored mandatory deadlines for the

provision of discovery.  On the contrary, Defendants' flouting of their discovery obligations has

been utter and comprehensive.

    To date, PTP has sought discovery from Defendants through document requests and

interrogatories that PTP served on the court-ordered May 16, 2008 deadline.  *See* Dvorkin Aff.,

Exs. C and D.[4]  Defendants' responses to these requests were due on Wednesday, June 18,

2008.[5]  In a June 16, 2008 email, Mr. Bridger requested "a one week extension of time to

provide" Defendants' responses.  E-Mail to S. Dvorkin and J. Winsbro (Winsbro Aff., Ex. E).

PTP's counsel granted this request on the following day, but cautioned that there would be no

"further extensions."  Winsbro Aff. ¶ 9, Ex. F.  Mr. Bridger acknowledged PTP's "forbearance"

---

[4] Both discovery requests seek information pertinent to the coverage defenses identified in
Defendants' Answer.  For example, PTP has requested the production of documents concerning
the drafting and interpretation of the insurance policy, conditions and exclusions that Defendants
contend operate to limit or negate coverage for PTP's Spill-Related Liabilities, and copies of
Defendants' claims and underwriting files.  *See* Dvorkin Aff., Ex. C, Document Request nos. 1
and 3.

[5] *See* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A).

320141.03

and assured Mr. Winsbro that "I am sure we will have the responses to you on or before the

25th." June 17, 2008 2:23 pm E-Mail from J. Bridger to J. Winsbro (Winsbro Aff., Ex. G).

In the event, Defendants did not serve responses to either discovery request by the agreed

June 25, 2008 deadline and **never** responded until they were ordered by the Court to do so three

weeks after the responses were due. Dvorkin Aff. ¶¶ 3, 16. Indeed, **Defendants did not**

**produce a single document to PTP before July 14, 2008.** *Id.* ¶ 16 fn.

Concluding that prejudice to PTP's litigation interests was at that point irremediable,

PTP's counsel apprised Defendants' counsel, by email sent on July 8, 2008, that PTP would be

moving to impose sanctions of Defendants by reason of Defendants' wholesale flouting of their

discovery obligations. Dvorkin Aff. ¶ 16 and Exhibit E. At that time, **Defendants were four**

**months late in providing their Required Disclosures**, notwithstanding the fact that those

Disclosures are required by the express terms of Rule 26(a)(1) – and had been repeatedly

requested by PTP.[6]

On July 10 and 11, 2008, PTP's counsel initiated conference calls with Chambers and

Defendants' counsel, for the purpose of obtaining the Court's permission to make the

contemplated Rule 37 sanctions motion. In the course of the July 11 telephone call, the Court

(per Ms. Wainer Apter) directed Defendants to provide all overdue discovery to PTP by July 14,

2008.

PTP received what purports to be Defendants' Rule 26(a)(1) disclosures on July 14, 2008

(Exhibit F). Those disclosures are most charitably described as "sketchy" in the assistance they

provide to PTP in respect of important issues. For example, the Disclosures reveal, for the first

---

[6] At that time, Defendants also were thirteen days late in answering PTP's Interrogatories, and thirteen days late in responding to PTP's Requests for Production of Documents. Dvorkin Aff. ¶ 16 fn.

320141.03

time, the names of five impliedly knowledgeable employees of Defendants, but furnish the same

uselessly general incantation as what each of those individuals is "believed" to know.  According

to the belated Disclosures, each of the newly-identified insurer witnesses is "believed" to have

knowledge in respect of Defendants' "continued consideration of claim submissions."  *See*

Exhibit F at pp. 5 and 6.  Not one of the newly-identified witnesses is identified as having

knowledge regarding the factual bases for Defendants' contentions that PTP will be unable to

make out a prima facie case establishing its entitlement to coverage in respect of PTP's Spill-

Related Liabilities, or the bases for any of the (literally) dozens of defenses that Defendants have

invoked in support of their refusal to pay PTP's claims.

The Case Management Order governing this action establishes October 20, 2008 as the

Trial-Ready Date.  Thus, PTP had a total of seven months between the date on which the

Required Disclosures were due (March 13, 2008) and the Trial-Ready Date to inquire into the

merits of Defendants' defenses to PTP's claims, and to prepare to overcome those defenses at

trial (the "Available Case-Preparation Period").  *More than half of that time had elapsed before*

*Defendants served their version of the Required Disclosures.*

## ARGUMENT

### DEFENDANTS SHOULD BE SANCTIONED FOR THEIR FLOUTING OF RULE 26(A) DISCOVERY OBLIGATIONS – FOR WHICH THEY OFFER NO EXCUSE

**A.    The Applicable Rules And Legal Standards**

Fed. R. Civ. P. 37(c) provides:

> If a party fails to provide information or identify a witness as
> required by Rule 26(a) . . . the party is not allowed to use that
> information or witness to supply evidence on a motion, at a
> hearing, or at trial, unless the failure was substantially justified or
> is harmless.  In addition to or instead of this sanction, the court, on
> motion and after giving an opportunity to be heard:

(A)    may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B)    may inform the jury of the party's failure; and

(C)    may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Rule 37(b)(2)(A)(iii) and (vi) authorize, respectively, the striking of pleadings and the rendering of a default judgment against the disobedient party.

The imposition of the Rule 37(c) preclusion sanction has been characterized as "automatic," where the party against which the sanction would be directed has failed to make Rule 26(a) disclosures "without substantial justification"; and that "automatic sanction" was intended to "provide[] a strong inducement for disclosure of material that the disclosing party would expect to use as evidence[.]" Fed. R. Civ. P. 37 Advisory Committee Notes to 1993 Amendments. Although the court to which the sanctions motion is addressed has discretion in choosing among the available sanctions, "[i]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with [Rule 26(a)] was either justified or harmless and therefore deserving of some lesser sanction." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 298 (2d Cir. 2006) ("*Design Strategy*"); *see 24/7 Records, Inc. v. Sony Music Entertainment, Inc.*, 2008 WL 2605168 (S.D.N.Y. Jul. 1, 2008) at *9 ("Preclusion is 'automatic' unless the non-disclosure was substantially justified or harmless, or unless the district court in its discretion chooses an alternative sanction as provided in Rule 37(c)(1))").

In addition to preclusion, or as an alternative thereto, courts have struck the disobedient party's pleadings, and entered default judgments, as sanctions for failure to provide initial disclosures. *See, e.g., Qualls v. Widnall*, 221 F.3d 1339 (7th Cir. 2000); *Calkins v. Pacel Corp.*, No. 3:07cv00025, 2008 WL 2311565 (W.D. Va. June 4, 2008); *Microsoft Corp. UNET Worldwide, Inc.*, No. 06 cv5028 (ADS), 2008 WL 207848 (E.D.N.Y. Jan 22, 2008). The factors

appropriately considered by the district court in choosing the sanctions to be imposed include the merits of the party's explanation for the failure to comply with the disclosure requirement, and the prejudice suffered by the party that was entitled to receive the disclosures. *See Patterson v. Balsamico*, 440 F. 3d 104, 117 (2d Cir. 2006). The selection of sanctions appropriately imposed is a matter within the discretion of the district court, once it is determined that the nondisclosure was neither justified nor harmless; and the imposed sanctions will not set aside unless the district court is found to have abused its discretion. *Design Strategy*, 469 F. 3d at 298.

**B.    The Sanctions Appropriately Imposed**

Here, significant sanctions are appropriately imposed because Defendants' failure to make the Required Disclosures in a timely manner was totally unjustified – and has been (and would be, absent the imposition of appropriate sanctions) self-evidently prejudicial to PTP.

As recounted above, Defendants were on several occasions reminded of their obligations, but simply failed to fulfill them. Even in providing their version of the Required Disclosures, four months after they were due, Defendants did not claim that there was any impediment to their timely compliance with the Rule.[7] "Bad faith" is not required to justify the imposition of Rule 37 sanctions: simply a want of justification for the failure to make the Required Disclosures. *Design Strategy*, 469 F.3d at 296 ("Rule 37(c)(1) by its terms does not require a showing of bad faith").

In considering the flagrancy of Defendants' noncompliance with Rule 26(a) discovery obligations, it is instructive to compare the facts present here with the facts present in the reported sanctions decisions. In the overwhelming majority of those decisions, the courts were

---

[7] Indeed, on May 14, 2008, Defendants' counsel stated that such disclosures as they were willing to make were almost completed. *See* Winsbro Aff. ¶ 8, Exhibit E. Even so, however, those disclosures were not made in the ensuing two-month period.

320141.03

considering the sanctions appropriately imposed in circumstances where the noncompliant party

had failed to fulfill one aspect of its disclosure obligation. *See, e.g., Sears, Roebuck & Co. v.*

*Goldstone & Sudalter*, 128 F.3d 10 (1st Cir. 1997) (failure to identify a particular witness);

*Falconer v. Penn Maritime, Inc.*, 232 F.R.D. 37 (D. Me. 2005) (same); *Austrian Airlines*

*Oesterreichische Lufverkehrs AG v. UT Finance Corp.*, No. 04 Civ. 3854RCCAJP, 2005 WL

977850 *3 (failure to provide damages computation required by Rule 26(a)(1)A)(iii)); *24/7*

*Records, Inc. v. Sony Music Entertainment, Inc.*, No. 03 Civ. 3204(MGC), 2008 WL 2605168

*8-9 (S.D.N.Y. July 1, 2008) (same).  Here, in contrast, Defendants made no effort to comply

with their Rule 26(a) obligations in any respect.  Such egregious circumstances are present in

relatively few of the reported decisions (for obvious reasons); and, where they are present, the

sanctions imposed are appropriately stiff.  *See, e.g., Microsoft Corp. v. UNET Worldwide, Inc.*,

No. 06 cv5028(ADS)(WDW), 2008 WL 207848 (E.D.N.Y. Jan. 22, 2008) (adopting magistrate

judge's report and recommendation, recommending that that defendant's pleadings be stricken

and a default judgment be rendered against them, after defendants had failed to provide initial

disclosures, and had failed to provide any meaningful discovery, notwithstanding motions to

compel and admonitions from the court); *Calkins v. Pacel Corp.*, No. 3:07cv00025, 2008 WL

2311565 (W.D. Va. June 4. 2008)(granting sanction of default judgment against defendant after

numerous warnings from the court, and corresponding failures to provide initial disclosures, as

well as discovery); *Russo v. Network Solutions, Inc.* No. C-07-3401 MMC (EMC) 2008 WL

114908 (N.D. Cal. Jan. 10, 2008) (where plaintiff had failed to provide any initial disclosures,

notwithstanding court order compelling him to do so, and failed to respond to motion for

sanctions, court awarded monetary sanctions, recommended sanction precluding plaintiff "from

using any evidence that would have been part of the initial disclosures had Rule 26(a) been

complied with," and noted that this sanction "would likely resolve the case on the merits against [plaintiff]").

The prejudice to PTP's interests is substantial – and to a considerable extent self-evident. It needs only to be repeated that more than one-half of the period provided for case-preparation had elapsed between the date when Defendants' initial disclosures were due and the date on which plaintiff's deficient version of those disclosures were made.  PTP had, in contrast, timely made its Rule 26(a) Required Disclosures, and had produced thousands of pages of relevant documents to Defendants.  *See* Dvorkin Aff. ¶¶ 10, 16-18.  Defendants should not be permitted to position themselves advantageously in the litigation of this lawsuit by the simple expedient of declining to satisfy discovery obligations.  The foregoing, without more, establishes that PTP has sustained substantial prejudice by reason of Defendants' unjustified noncompliance with discovery obligations.

In fact, the prejudice worked by the mere passage of time has been compounded by the "quality" of the Rule 26(a) disclosures that Defendants ultimately saw fit to make.  As noted above, to say that the information provided by Defendants is "sketchy" is to say the least. Indeed, PTP will go so far as to say that the general statement that each the five newly-identified fact witnesses is "believed" to have knowledge in respect of Defendants' "continued consideration of claim submissions" [*see* Exhibit F at pp. 5 and 6] is so general and evasive as to represent noncompliance with the requirements of Rule 26(a)(1)(A)(i) (which requires that the disclosing party provide the "subjects of [the] information" likely possessed by each disclosed witness).

## CONCLUSION

Quite apart from what PTP views as their inadequacy under Fed. R. Civ. P. 26(a)(1)(A)(i), Defendants' Required Disclosures are egregiously – and inexcusably – late.  It is

320141.03

unfair for PTP to have to attempt to play "catch-up" by conducting discovery (depositions; development of any appropriate expert opinion testimony – etc.) in the time that remains after Defendants "burned" more than half of the provided case-preparation period before making the preliminary – and required – Disclosures. PTP should not be put in the position of being forced to accept whatever "settlement offer" Defendants deign to make, on the eve of trial, simply because Defendants' refusal to provide discovery has left PTP unable to rejoin to Defendants' defenses at trial.

If the sanctions of Fed. R. Civ. P. 37, do not apply in the circumstances of a litigant's utter failure to provide any of the Rule 26(a) "Required Disclosures" (or, for that matter, any discovery), it is difficult to imagine the circumstances in which they would apply. Those Rule 37 sanctions were designed to hold litigants to account for the very sorts of abuses of which Defendants are guilty – and the Court should not be reluctant to impose those sanctions in the circumstances of this case.

Because Defendants' violation of the requirements of Rule 26(a) were egregious, inexcusable (given PTP's repeated warnings), and self-evidently prejudicial to the rights of PTP, the Court should enter an Order granting PTP default judgment, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi) and 37(c)(1)(C). Alternatively, the Court's Order should strike all of the thirty-three affirmative defenses set forth in Defendants' Answer, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(iii) and 37(c)(1)(C), and bar Defendants' introduction at trial of the testimony of all witnesses identified in Defendants' untimely Rule 26(a) disclosures, pursuant to Fed. R. Civ. P. 37(c)(1). The Court's Order should also award to PTP, and require Defendants' to pay, all of the attorneys' fees and expenses that PTP has incurred and will incur in bringing on and seeking the adjudication of this motion, pursuant to Fed. R. Civ. P. 37(c)(1)(A).

-13-

Dated: New York, New York
      July 25, 2008

                             Respectfully submitted,

                             DICKSTEIN SHAPIRO LLP

                             By:  /s/ Stephen A. Dvorkin
                                 STEPHEN A. DVORKIN (SD-0341)
                                 JOHN P. WINSBRO (JW-5211)
                           1177 Avenue of the Americas
                           New York, New York 10036
                           Telephone: (212) 277-6500

                           Attorneys for the Plaintiff,
                           Petroterminal de Panama, S.A.

320141.03

DICKSTEIN SHAPIRO LLP
STEPHEN A. DVORKIN (SD-0341)
JOHN P. WINSBRO (JW-5211)
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 277-6500

Attorneys for the Plaintiff,
Petroterminal de Panama, S.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
                                                      :
PETROTERMINAL DE PANAMA, S.A.,                        :       08 CV 00547 (JSR)
                                                      :
                              Plaintiff,              :
                                                      :
         – against –                                  :
                                                      :
HOUSTON CASUALTY COMPANY, NATIONAL                    :
LIABILITY & FIRE INSURANCE COMPANY a/k/a              :
NATIONAL FIRE & LIABILITY INSURANCE                   :
COMPANY, LIBERTY MUTUAL INSURANCE                     :
COMPANY, GREAT AMERICAN INSURANCE                     :
COMPANY OF NEW YORK, INDEMNITY                        :
INSURANCE COMPANY OF NORTH AMERICA, and               :
CONTINENTAL INSURANCE COMPANY,                        :
                                                      :
                              Defendants.             :
                                                      :
------------------------------------------------------------------ x

**STATE OF NEW YORK**                    )
**COUNTY OF NEW YORK**          :     **ss:**
**SOUTHERN DISTRICT OF NEW YORK )**

## AFFIDAVIT OF JOHN P. WINSBRO

1.  I am an attorney admitted to practice before the courts of New York, and before this

Court, and am a Counsel at Dickstein Shapiro LLP, attorneys for the plaintiff, Petroterminal de

Panama, S.A. ("PTP"), in the above-entitled action.  I submit this affidavit in support of PTP's

motion to impose sanctions upon the defendants, Houston Casualty Company; National Liability

& Fire Insurance Company (a/k/a National Fire & Liability Insurance Company); Liberty Mutual

Insurance Company; Great American Insurance Company of New York; Indemnity Insurance

Company of North America; and Continental Insurance Company (collectively, "Defendants"),

under Rule 37 of the Federal Rules of Civil Procedure, by reason of Defendants' complete

disregard of their discovery obligations.

2.   Stephen Dvorkin and I attended the March 20, 2008 scheduling conference in this

matter.  Immediately following that conference, Mr. Dvorkin raised with counsel for the

Defendants, Jay Lonero, Esq. and Gary Centola, Esq., that Defendants had yet to serve the Initial

Disclosures that were due on March 13, 2008.  Messrs. Lonero and Centola indicated a belief

that Defendants' Initial Disclosures were not due as yet but added that Defendants would serve

the Initial Disclosures in the near, if not immediate, future.

3.   In a Monday, May 12, 2008 telephone conversation, I raised Defendants' continuing

failure to serve their Initial Disclosures with Jeffrey Bridger, another attorney who represents

Defendants in this matter.  Mr. Bridger stated that he would check on the status of Defendants'

Initial Disclosures.  I did not hear anything further from Mr. Bridger that day, and on the evening

of May 12 sent Mr. Bridger a follow-up email.  A true and correct copy of my May 12, 2008

7:39 pm email is appended to this Affidavit as Exhibit A.

4.   I likewise heard nothing from Mr. Bridger on Tuesday, May 13.  Accordingly, on the

morning of Wednesday, May 14, I sent Mr. Bridger another email forwarding my earlier email

inquiry entitled "Initial Disclosures."  A true and correct copy of my May 14, 2008 9:24 am

email is appended to this Affidavit as Exhibit B.

5.   Mr. Bridger responded to this latest inquiry in an email that I received at 10:44 am on

the same day.  In that e-mail, Mr. Bridger explained that "[t]he disclosures I have drafted have

2

gone MIA, so I am re-doing them to go out, I expect, this evening." A true and correct copy of the referenced email is appended to this Affidavit as Exhibit C.

6. Despite Mr. Bridger's representation, PTP did not receive Initial Disclosures from Defendants at any time before July 14, 2008 – after the Court ordered Defendants' counsel to file and serve their Initial Disclosures.

7. I also communicated directly with Defendants' counsel concerning their responses to PTP's First Set of Document Requests and First Set of Interrogatories. PTP served those discovery requests on May 16, 2008. True and correct copies of my May 16, 2008 emails forwarding those requests to Defendants' counsel (and advising of the simultaneous service of the requests by Federal Express) are appended to this Affidavit as Exhibit D.

8. On June 16, 2008, Stephen Dvorkin and I received an email from Mr. Bridger requesting a one-week extension of time in which to respond to the document requests and interrogatories that PTP had served on May 16. In that email, Mr. Bridger represented that Defendants had "been working diligently to provide responses" to PTP's discovery requests and had "gathered what we believe is all information responsive to your requests." Mr. Bridger nonetheless asked for an additional week for the reason that Defendants had "not yet completed our preparation of [the information] for production with written responses." A true and correct copy of Mr. Bridger's June 16, 2008 6:20 pm e-mail is appended to this Affidavit as Exhibit E.

9. I responded to Mr. Bridger's request in an email sent the following day. In that email, I advised Mr. Bridger that PTP was agreeable to "extending the deadline [for Defendants' discovery responses] by an additional week, that is, until Wednesday, June 25, but will not be in a position to grant any further extensions in this regard." A true and correct copy of my June 17, 2008 2:20 pm e-mail to Mr. Bridger is appended to this Affidavit as Exhibit F.

320422.01

10. In an e-mail sent the same day, Mr. Bridger acknowledged PTP's "forbearance" and added that "I am sure we will have the responses to you by or before the 25th." A true and correct copy of Mr. Bridger's June 17, 2008 2:23 pm e-mail is appended to this Affidavit as Exhibit G.

11. PTP did not receive any responses to its document requests and interrogatories on or before the agreed June 25, 2008 deadline. In fact, PTP did not receive those responses until July 14, 2008 – after the Court ordered Defendants to respond to PTP's outstanding discovery requests.

JOHN P. WINSBRO

Sworn to before me this
25th day of July 2008

Notary Public

ALDEN T. ONEIL
Notary Public, State of New York
No. 01ON5145367
Qualified in New York County
Commission Expires May 8, 2010

4

320422.01

Exhibit A

**Winsbro, John**

| | |
|---|---|
| **From:** | Winsbro, John |
| **Sent:** | Monday, May 12, 2008 7:39 PM |
| **To:** | 'Jeff Bridger' |
| **Subject:** | Initial Disclosures |

Hi Jeff -- Just following up on our telephone conversation of this morning. Please let me know the status when you get a chance.

Thanks,

Jack

**John P. Winsbro**
Counsel
Dickstein Shapiro LLP
1177 Avenue of the Americas | New York, NY 10036
Tel (212) 277-6683| Fax (212) 277-6501
winsbroj@docksteinshapiro.com

Exhibit B

**Winsbro, John**

| | |
|---|---|
| **From:** | Winsbro, John |
| **Sent:** | Wednesday, May 14, 2008 9:24 AM |
| **To:** | 'Jeff Bridger' |
| **Subject:** | FW: Initial Disclosures |

Jeff?

---

**From:** Winsbro, John
**Sent:** Monday, May 12, 2008 7:39 PM
**To:** 'Jeff Bridger'
**Subject:** Initial Disclosures

Hi Jeff -- Just following up on our telephone conversation of this morning. Please let me know the status when you get a chance.

Thanks,

Jack

**John P. Winsbro**
Counsel
Dickstein Shapiro LLP
1177 Avenue of the Americas | New York, NY 10036
Tel (212) 277-6683| Fax (212) 277-6501
winsbroj@dicksteinshapiro.com

Exhibit C

## Winsbro, John

| | |
|---|---|
| **From:** | Jeff Bridger [jbridger@lpwsl.com] |
| **Sent:** | Wednesday, May 14, 2008 10:44 AM |
| **To:** | Winsbro, John |
| **Subject:** | Re: FW: Initial Disclosures |

My apologies for the delay in getting back to you, Jack.  The disclosures I drafted have gone MIA, so I am re-doing them to go out, I expect, this evening.  If it is agreeable to you, we would like to push service of initial written discovery to Mon., 19 May, as we briefly discussed.

By the way, we are also sending Bshoot's payment on PTP's cost clause claim via overnight. Should you wish to discuss any aspect of this matter, please don't hesitate to call or write. Thanks very much for your consideration.


Respectfully,


Jeff Bridger


R. Jeffrey Bridger
Larzelere Picou Wells Simpson Lonero, LLC
Two Lakeway Center - Suite 1100
3850 N. Causeway Blvd.
Metairie, LA 70002
Tel. No. 504-834-6500
Fax No. 504-834-6565

This e-mail transmission, and any documents, files or e-mail messages attached are deemed to contain confidential information that is attorney work product or legally privileged and may also be protected by the Electronic Communications Privacy Act, 18 U.S.C.A. §§ 2510-2521.  If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
Internal Revenue Service regulations provide that a taxpayer may rely only on formal written advice meeting specific requirements to avoid federal tax penalties.  Any tax advice in the text of this message, or in any attachment, does not meet those requirements and is neither intended nor written to be used, and cannot be used, by any recipient as tax advice and/or to avoid penalties that may be imposed by the I.R.S.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
If you have received this transmission in error, please notify R. Jeffrey Bridger at telephone 504-834-6500 (fax 504-834-6565) immediately, and destroy the original transmission and its attachments without reading them.


>>> "Winsbro, John" <WinsbroJ@dicksteinshapiro.com> 5/14/2008 8:24 AM >>>

Jeff?

**From:** Winsbro, John
**Sent:** Monday, May 12, 2008 7:39 PM
**To:** 'Jeff Bridger'
**Subject:** Initial Disclosures

Hi Jeff -- Just following up on our telephone conversation of this morning. Please let me know the status when you get a chance.

Thanks,

Jack

**John P. Winsbro**
Counsel
Dickstein Shapiro LLP
1177 Avenue of the Americas | New York, NY 10036
Tel (212) 277-6683| Fax (212) 277-6501
winsbroj@dicksteinshapiro.com

-------------------------------------------------------
This e-mail message and any attached files are confidential
and are intended solely for the use of the addressee(s)
named above. This communication may contain material
protected by attorney-client, work product, or other
privileges. If you are not the intended recipient or person
responsible for delivering this confidential communication
to the intended recipient, you have received this
communication in error, and any review, use, dissemination,
forwarding, printing, copying, or other distribution of
this e-mail message and any attached files is strictly
prohibited. Dickstein Shapiro reserves the right to monitor
any communication that is created, received, or sent on its
network.  If you have received this confidential
communication in error, please notify the sender
immediately by reply e-mail message and permanently delete
the original message.

To reply to our email administrator directly, send an email
to postmaster@dicksteinshapiro.com

Dickstein Shapiro LLP
http://www.DicksteinShapiro.com
=====================================================================

NOTICE OF DOMAIN CHANGE
Effective 15 March 2008, Larzelere Picou Wells Simpson Lonero,
LLC changed its primary domain name to lpwsl.com. Current E-mail
names will remain the same, but the email domain will change. Thus,
admin@lpw-law.com will now be admin@lpwsl.com. Please update your
address book. LPWSL will continue to accept e-mail at the lpw-law.com

domain for a time to support this change.
Thank You
Postmaster LPWSL


CONFIDENTIALITY NOTICE

This E-mail transmission may contain confidential information
that is protected by the attorney-client privilege or
work-product doctrine. The information is intended only for
the person named above. If you have received this transmission
in error, please immediately notify us and destroy the transmission.

Exhibit D

**Winsbro, John**

| | |
|---|---|
| **From:** | Winsbro, John |
| **Sent:** | Friday, May 16, 2008 6:47 PM |
| **To:** | Jay Lonero; 'Jeff Bridger' |
| **Cc:** | Dvorkin, Stephen |
| **Subject:** | PTP v Houston Casualty Co., et al: Plaintiffs' First Set of Interrogatories |
| **Attachments:** | Plaintiff's First Set of Interrogatories.pdf |

Jay and Jeff -- Here is a copy of the interrogatories that we served today by Federal Express.  In a separate e-mail, I'll forward a copy of the document requests that we also served earlier today.

Regards,

Jack

**Winsbro, John**

| | |
|---|---|
| **From:** | Winsbro, John |
| **Sent:** | Friday, May 16, 2008 6:49 PM |
| **To:** | Jay Lonero; 'Jeff Bridger' |
| **Cc:** | Dvorkin, Stephen |
| **Subject:** | PTP v Houston Casualty co., et al.: Plaintiff's First Set of Requests for Production of Documents |

**Attachments:** Plaintiff's First Request For Production of Documents.pdf

Exhibit E

## Winsbro, John

| | |
|---|---|
| **From:** | Jeff Bridger [jbridger@lpwsl.com] |
| **Sent:** | Monday, June 16, 2008 6:20 PM |
| **To:** | Dvorkin, Stephen; Winsbro, John |
| **Subject:** | PTP Oil Spill 2/4/07 Our File No. 07166 |

Gentlemen:

We have been working diligently to provide responses to your initial discovery in this matter while also responding to the claims and supplemental information PTP has submitted. While we have gathered what we believe is all information responsive to your requests, we have not yet completed our preparation of same for production with written responses. We, therefore, request a one week extension of time to provide responses to PTP's initial discovery and will provide same as soon as possible. I would appreciate your response to this request at your earliest convenience. Thank you for your consideration.

Respectfully,

Jeff Bridger

R. Jeffrey Bridger
Larzelere Picou Wells Simpson Lonero, LLC
Two Lakeway Center - Suite 1100
3850 N. Causeway Blvd.
Metairie, LA 70002
Tel. No. 504-834-6500
Fax No. 504-834-6565

This e-mail transmission, and any documents, files or e-mail messages attached are deemed to contain confidential information that is attorney work product or legally privileged and may also be protected by the Electronic Communications Privacy Act, 18 U.S.C.A. §§ 2510-2521. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
Internal Revenue Service regulations provide that a taxpayer may rely only on formal written advice meeting specific requirements to avoid federal tax penalties. Any tax advice in the text of this message, or in any attachment, does not meet those requirements and is neither intended nor written to be used, and cannot be used, by any recipient as tax advice and/or to avoid penalties that may be imposed by the I.R.S.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
If you have received this transmission in error, please notify R. Jeffrey Bridger at telephone 504-834-6500 (fax 504-834-6565) immediately, and destroy the original transmission and its attachments without reading them.
NOTICE OF DOMAIN CHANGE
Effective 15 March 2008, Larzelere Picou Wells Simpson Lonero,
LLC changed its primary domain name to lpwsl.com. Current E-mail
names will remain the same, but the email domain will change. Thus,
admin@lpw-law.com will now be admin@lpwsl.com. Please update your
address book. LPWSL will continue to accept e-mail at the lpw-law.com

domain for a time to support this change.
Thank You
Postmaster LPWSL


CONFIDENTIALITY NOTICE

This E-mail transmission may contain confidential information
that is protected by the attorney-client privilege or
work-product doctrine. The information is intended only for
the person named above. If you have received this transmission
in error, please immediately notify us and destroy the transmission.

Exhibit F

**Winsbro, John**

| | |
|---|---|
| **From:** | Winsbro, John |
| **Sent:** | Tuesday, June 17, 2008 2:20 PM |
| **To:** | 'Jeff Bridger' |
| **Cc:** | Dvorkin, Stephen |
| **Subject:** | PTP v Houston Casualty, et al. |

Jeff -- By my calculations, the bumbershoot insurers' responses to PTP's document requests and interrogatories are due Wednesday, June 18.  As also discussed, we are extending the deadline by an additional week, that is, until Wednesday, June 25, but will not be in a position to grant any further extensions in this regard.

Jack

**John P. Winsbro**
Counsel
Dickstein Shapiro LLP
1177 Avenue of the Americas | New York, NY 10036
Tel (212) 277-6683| Fax (212) 277-6501
winsbroj@dicksteinshapiro.com

Exhibit G

**Winsbro, John**

| | |
|---|---|
| **From:** | Jeff Bridger [jbridger@lpwsl.com] |
| **Sent:** | Tuesday, June 17, 2008 2:23 PM |
| **To:** | Winsbro, John |
| **Subject:** | Re: PTP v Houston Casualty, et al. |

Jack:
Thanks very much for your forbearance.  I am sure we will have the responses to you by or before the 25th.  Have not yet heard back from Stasi International regarding the slight change in the Panama interview schedule, but do not anticipate a problem.  Will confirm soonest.  Please feel free to call should you wish to discuss any aspect of this matter.


Respectfully,

Jeff Bridger

R. Jeffrey Bridger
Larzelere Picou Wells Simpson Lonero, LLC
Two Lakeway Center - Suite 1100
3850 N. Causeway Blvd.
Metairie, LA 70002
Tel. No. 504-834-6500
Fax No. 504-834-6565

This e-mail transmission, and any documents, files or e-mail messages attached are deemed to contain confidential information that is attorney work product or legally privileged and may also be protected by the Electronic Communications Privacy Act, 18 U.S.C.A. §§ 2510-2521.  If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
Internal Revenue Service regulations provide that a taxpayer may rely only on formal written advice meeting specific requirements to avoid federal tax penalties.  Any tax advice in the text of this message, or in any attachment, does not meet those requirements and is neither intended nor written to be used, and cannot be used, by any recipient as tax advice and/or to avoid penalties that may be imposed by the I.R.S.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
If you have received this transmission in error, please notify R. Jeffrey Bridger at telephone 504-834-6500 (fax 504-834-6565) immediately, and destroy the original transmission and its attachments without reading them.


>>> "Winsbro, John" <WinsbroJ@dicksteinshapiro.com> 6/17/2008 1:19 PM >>>

Jeff -- By my calculations, the bumbershoot insurers' responses to PTP's document requests and interrogatories are due Wednesday, June 18.  As also discussed, we are extending the deadline by an additional week, that is, until Wednesday, June 25, but will not be in a position to grant any further extensions in this regard.

Jack

**John P. Winsbro**
Counsel
Dickstein Shapiro LLP
1177 Avenue of the Americas | New York, NY 10036
Tel (212) 277-6683| Fax (212) 277-6501
winsbroj@dicksteinshapiro.com

-------------------------------------------------------
This e-mail message and any attached files are confidential
and are intended solely for the use of the addressee(s)
named above. This communication may contain material
protected by attorney-client, work product, or other
privileges. If you are not the intended recipient or person
responsible for delivering this confidential communication
to the intended recipient, you have received this
communication in error, and any review, use, dissemination,
forwarding, printing, copying, or other distribution of
this e-mail message and any attached files is strictly
prohibited. Dickstein Shapiro reserves the right to monitor
any communication that is created, received, or sent on its
network.  If you have received this confidential
communication in error, please notify the sender
immediately by reply e-mail message and permanently delete
the original message.

To reply to our email administrator directly, send an email
to postmaster@dicksteinshapiro.com

Dickstein Shapiro LLP
http://www.DicksteinShapiro.com
======================================================================

NOTICE OF DOMAIN CHANGE
Effective 15 March 2008, Larzelere Picou Wells Simpson Lonero,
LLC changed its primary domain name to lpwsl.com. Current E-mail
names will remain the same, but the email domain will change. Thus,
admin@lpw-law.com will now be admin@lpwsl.com. Please update your
address book. LPWSL will continue to accept e-mail at the lpw-law.com
domain for a time to support this change.
Thank You
Postmaster LPWSL

CONFIDENTIALITY NOTICE

This E-mail transmission may contain confidential information
that is protected by the attorney-client privilege or
work-product doctrine. The information is intended only for

the person named above. If you have received this transmission
in error, please immediately notify us and destroy the transmission.

DICKSTEIN SHAPIRO LLP
STEPHEN A. DVORKIN (SD-0341)
JOHN P. WINSBRO (JW-5211)
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 277-6500

Attorneys for the Plaintiff,
Petroterminal de Panama, S.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                                                 :
PETROTERMINAL DE PANAMA, S.A.,                                   :        08 CV 00547 (JSR)
                                                                 :
                              Plaintiff,                         :
                                                                 :
            – against –                                         :
                                                                 :
HOUSTON CASUALTY COMPANY, NATIONAL                               :
LIABILITY & FIRE INSURANCE COMPANY a/k/a                         :
NATIONAL FIRE & LIABILITY INSURANCE                              :
COMPANY, LIBERTY MUTUAL INSURANCE                                :
COMPANY, GREAT AMERICAN INSURANCE                                :
COMPANY OF NEW YORK, INDEMNITY                                   :
INSURANCE COMPANY OF NORTH AMERICA, and                         :
CONTINENTAL INSURANCE COMPANY,                                   :
                                                                 :
                              Defendants.                        :
                                                                 :
---------------------------------------------------------------- x

**STATE OF NEW YORK**                    )
**COUNTY OF NEW YORK**                   : ss.:
**SOUTHERN DISTRICT OF NEW YORK**        )

<u>**AFFIDAVIT OF STEPHEN A. DVORKIN**</u>

STEPHEN A. DVORKIN, being duly sworn, says:

1.       I am an attorney admitted to practice before the courts of New York, and

before this Court, and am a member of Dickstein Shapiro LLP, counsel for the plaintiff,

Petroterminal de Panama, S.A. ("PTP"), in the above-entitled action.  I make this affidavit in

support of PTP's motion to impose sanctions upon the defendants, Houston Casualty Company;

National Liability & Fire Insurance Company (a/k/a National Fire & Liability Insurance

Company); Liberty Mutual Insurance Company; Great American Insurance Company of New

York; Indemnity Insurance Company of North America; and Continental Insurance Company

(collectively, "Defendants"), under Rule 37 of the Federal Rules of Civil Procedure, by reason of

Defendants' complete disregard of their discovery obligations.

<u>**INTRODUCTION AND STATEMENT OF RELIEF SOUGHT**</u>

2.      Defendants' "required disclosures" under Fed. R. Civ. P. 26(a) (the

"Required Disclosures") should have been served no later than March 13, 2008.  PTP reminded

Defendants of their obligation to make the Required Disclosures on two separate occasions—in

March and in May of 2008 – and on both occasions were promised that the disclosures would be

made shortly.  As of July 8, 2008, Defendants still had not made the Required Disclosures, and

were also in arrears in responding to PTP's document requests and in answering PTP's

interrogatories.  Given the October 20, 2008 date by which this case must be trial-ready (per the

Case Management Plan adopted by the Court) (the "Trial-Ready Date"), PTP was forced to

conclude that the harm to its timely trial-preparation efforts was by that point irremediable, and

so advised Defendants on that day of PTP's intention to make the within motion.

3.      In the course of a July 11, 2008 conference call with Chambers requested

by PTP to obtain leave to make this motion, Defendants were directed by the Court to serve all

overdue discovery by July 14, 2008.  Whether the papers received by PTP on July 14th satisfy

the letter and spirit of the relevant Rules is a separate matter (which will be touched on below);

but the answer to that question cannot absolve Defendants of responsibility for their wholesale

2

flouting of discovery obligations—despite PTP's repeated reminders.  To put the matter in stark

perspective: A total of seven months were available to the parties for discovery and trial

preparation between the date when Defendants' Required Disclosures were due to be served and

the Trial-Ready Date.  ***More than half of that time had elapsed before Defendants served their***

***version of the Required Disclosures***. (Lest it be inferred that Defendants' failure to make the

Required Disclosures was a unique aberration, Defendants also were in arrears in answering

PTP's interrogatories and in responding to PTP's document requests when PTP finally

determined to avail itself of the redress afforded by Fed. R. Civ. P. 37.)

      4.     In its accompanying memorandum of law, PTP demonstrates that

sanctions are appropriately imposed for an unexcused failure to fulfill Fed. R. Civ. P. 26(a)

requirements, unless that dereliction was "harmless."  Here, however, it is clear that PTP has

been prejudiced by Defendants' failure to provide, timely and in full, the preliminary disclosures

required by Rule 26(a).  Defendants have advanced no fewer than thirty-three affirmative

defenses to PTP's claims in this lawsuit.  As averred in further detail, below, the factual

circumstances supporting a number of those defenses are known (if they exist) exclusively by

Defendants.  It is self-evidently prejudicial for Defendants to delay, materially, the time available

to PTP for preparation of its case—particularly its case rejoining to Defendants' defenses.

      5.     PTP on this motion seeks an Order of the Court:

    (a)     granting PTP default judgment on the claims in PTP's Amended
             Complaint, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi) and 37(c)(1)(C); or,
             alternatively,

    (b)     striking all of the thirty-three affirmative defenses set forth in Defendants'
             Answer, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(iii) and 37(c)(1)(C); and,
             additionally (or alternatively),

    (c)     barring Defendants' introduction at trial of the testimony of all witnesses
             identified in Defendants' untimely Rule 26(a) disclosures, pursuant to Fed.
             R. Civ. P. 37(c)(1); and, additionally,

(d)    awarding PTP, and requiring Defendants to reimburse PTP for, the
attorneys' fees and expenses it has incurred and will incur in bringing on
and seeking the adjudication of this motion, pursuant to Fed. R. Civ. P.
37(c)(1)(A).

As stated above — and as will be further demonstrated in the following paragraphs — each and
all of the forms of relief requested would be justly awarded in the circumstances present here.

## ELABORATION OF THE FACTS

6.    Defendants are insurance companies that subscribe to a "bumbershoot"
insurance policy ("Bumbershoot Policy") that promises to indemnify PTP against, inter alia,
liabilities (excess of primary policy limits) for bodily injury and property damage that occurred
during the December 1, 2006 to December 1, 2007 period of that policy.

7.    PTP requested indemnity under the Bumbershoot Policy for liabilities and
costs of defense incurred and to be incurred by PTP in connection with an oil spill that occurred
at its Chiriqui Grande, Panama terminal on February 4, 2007 (the "Spill," and "PTP's Spill-
Related Liabilities").

8.    PTP instituted this suit, on January 22, 2008, upon receipt of a letter in
which Defendants denied their obligations to indemnify PTP's Spill-Related Liabilities.

9.    Defendants' Answer, dated February 14, 2008 [copy annexed hereto as
Exhibit A] not only denies  PTP's claims for insurance coverage under the Bumbershoot Policy
in respect of PTP's Spill-Related Liabilities, but also asserts  thirty-three affirmative defenses to
PTP's claims—many of which are divided into separate parts that amount to additional
affirmative defenses.  Among those defenses are arguments that PTP should be denied coverage

(a)    "to the extent [it] . . .made false, fraudulent or misleading statements in
procuring [the Policy]" [see Exhibit A, Thirty-Second Defense]; and

(b)    because PTP's relevant liabilities were in fact caused "by the fault and/or
neglect and/or malpractice and/or malfeasance of other parties . . . for

4

whom Bumbershoot Underwriters are not responsible" [*see* Exhibit A, Twenty-Fifth Defense].

Defendants did not, in their Answer, or at any time since, particularize or support the allegations set forth in the foregoing affirmative defenses—or in any of the other affirmative defense of their Answer.

10.    Defendants' Rule 26(a) Required Disclosures were due to be served on PTP on March 13, 2008.  (On that date, PTP served its Required Disclosures on Defendants [*see* Exhibit B hereto].

11.    The Case Management Order governing this action establishes October 20, 2008 as the Trial-Ready Date.  Thus, PTP had a total of seven months from the date on which its required disclosures were due to inquire into the merits of Defendants' defenses to PTP's claims, and to prepare to overcome those defenses at trial.

12.    Defendants failed to make their Required Disclosures by March 13, 2008 – the date on which they were due.

13.    On March 20, 2008, counsel for the parties appeared before the Court for the Scheduling Conference in this case.  Immediately following the conference, my colleague, John Winsbro, and I mentioned to Defendants' counsel, Jay Lonero, Esq., and Gary Centola, Esq., that Defendants' Rule 26(a) Required Disclosures were overdue.  We were told by Messrs. Lonero and Centola that the Required Disclosures would be made shortly.

14.    On May 12, 2008, Mr. Winsbro once again broached the matter of Defendants' overdue Rule 26(a) disclosures with another of Defendants' attorneys, Jeffrey Bridger, Esq.  (See accompanying affidavit of John Winsbro, Esq., sworn to July 25, 2008 ["Winsbro Aff."].)  By email dated May 14, 2008, Mr. Bridger implied that a draft (at least) of

5

Defendants' Required Disclosures existed—and that those Disclosures would be received by

PTP very shortly.  *See* Winsbro Aff.  ¶ 5 and Exhibit C thereto.

15.    On May 16, 2008, PTP served on Defendants its First Set of

Interrogatories ("PTP's Interrogatories") and Request for Production of Documents ("PTP's

Requests for Production of Documents") (copies annexed as Exhibits C and D, respectively).

16.    Notwithstanding PTP's repeated reminders—and in the face of their

repeated promises – Defendants continued to ignore, utterly and comprehensively, their

discovery obligations.  Accordingly, by email sent on July 8, 2008, PTP's counsel apprised

Defendants' counsel that PTP would be moving to impose sanctions on Defendants by reason of

Defendants' wholesale flouting of their discovery obligations.  (A true copy of that July 8, 2008

email is annexed hereto as Exhibit E.)  At that time, Defendants were four months late in

providing the Rule 26(a) disclosures—notwithstanding the fact that those disclosures are

"required" by the terms of the Rule, itself. [1]

17.    On July 10 and 11, 2008, I initiated conference calls with Chambers (to

which Mr. Bridger was a party, on behalf of Defendants), for the purpose of securing the Court's

permission to make PTP's proposed Rule 37 sanctions motion.  In the course of the July 11th

telephone call, the Court (per Ms. Wainer Apter) directed Defendants to provide all overdue

discovery to PTP by July 13, 2008.

18.    PTP received what purports to be Defendants' Rule 26(a) disclosures on

July 14, 2008 (copy annexed hereto as Exhibit F).  Those disclosures are most charitably

described as "sketchy" in the assistance they provide to PTP in respect of important issues.  For

---

[1]   Defendants' responses to  PTP's  Interrogatories and Defendants' responses to  PTP's Requests for Production of Documents were also overdue.  Indeed, ***Defendants did not  produce a single document to PTP until July 14, 2008 – and only after the Court had ordered them to do so***.  PTP had already transmitted thousands of pages of relevant documents to Defendants.

example, the names of five impliedly knowledgeable employees of Defendants are revealed for the first time in these disclosures—with the same general incantation describing what each is "believed" to know: specifically, each is "believed" to have knowledge regarding Defendants' "continued consideration of claim submissions." *See* Exhibit F at 5 and 6. Not one of the newly-identified witnesses is identified as having knowledge regarding the bases of any one or more of the 33 affirmative defenses invoked in support of Defendants' refusal to pay PTP's claims.

19.    Quite apart from what PTP views as their inadequacy, Defendants' Required Disclosures are egregiously—and inexcusably—late. It is unfair for PTP to have to attempt to play "catch-up" by conducting discovery (depositions; development of any appropriate expert opinion testimony—etc.) in the time that remains after Defendants have inexcusably expropriated more than half of the available case-preparation period before making the preliminary—and required—disclosures. The sanctions set forth in Fed. R. Civ. P. 37 were designed to hold litigants to account for the very sorts of abuses of which Defendants are guilty—and the Court should not be reluctant to impose those sanctions in the circumstances of this case.

## CONCLUSION

20.    Because Defendants' violation of the requirements of Rule 26(a) were egregious, inexcusable (given PTP's repeated warnings), and self-evidently prejudicial to the legitimate rights of PTP, the Court should enter an Order granting PTP default judgment, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi) and 37(c)(1)(C). Alternatively, the Court 's Order should strike all of the thirty-three affirmative defenses set forth in Defendants' Answer, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(iii) and 37(c)(1)(C), and bar Defendants' introduction at trial of the testimony of all witnesses identified in Defendants' untimely Rule 26(a) disclosures,

DOCSNY-320504v01

pursuant to Fed. R. Civ. P. 37(c)(1). The Court's Order should also award PTP, and require Defendants' to pay, the attorneys' fees and expenses that PTP has incurred and will incur in bringing on and seeking the adjudication of this motion, pursuant to Fed. R. Civ. P. 37(c)(1)(A).

STEPHEN A. DVORKIN

Sworn to before me this 25th
day of July, 2008

Notary Public

ALDEN T. ONEIL
Notary Public, State of New York
No. 01ON6145367
Qualified in New York County
Commission Expires May 6, 2010

8

Exhibit A

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

PETROTERMINAL DE PANAMA, S.A.,

                      Plaintiff,

        vs.

HOUSTON CASUALTY COMPANY,
NATIONAL LIABILITY & FIRE
INSURANCE COMPANY a/k/a
NATIONAL FIRE & LIABILITY
INSURANCE COMPANY, LIBERTY
MUTUAL INSURANCE COMPANY,
GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK,
INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA, and
CONTINENTAL INSURANCE
COMPANY,

                   Defendants.

CIVIL ACTION NO.: 08 CV 00547 (JSR)(AJP)

**ANSWER AND JURY DEMAND**

Defendants, Houston Casualty Company, National Liability & Fire Insurance Company a/k/a National Fire & Liability Insurance Company, Liberty Mutual Insurance Company, Great American Insurance Company of New York, Indemnity Insurance Company of North America, and Continental Insurance Company (hereinafter collectively referred to as "Underwriters Subscribing to Policy No. 06/663" or "Bumbershoot Underwriters"), jointly by undersigned counsel, for their Answer to the Complaint of Petroterminal de Panama, S.A. (hereinafter, "PTP"), state as follows:

1.     The allegations of Paragraph 1 constitute conclusions of law and do not call for answer by these Defendants.  Should it be determined that a response to said allegations is required, they are denied.

2.     The allegations of Paragraph 2 constitute conclusions of law and do not call for answer by these Defendants.  Should it be determined that a response to said allegations is required, they are denied.  It is specifically denied that Bumbershoot Underwriters have in any regard breached any contractual obligations to PTP.

3.     The allegations of Paragraph 3 constitute conclusions of law and/or a request for relief and do not call for answer by these Defendants.

4.     Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 4.

5.     Houston Casualty Company is a foreign insurer, domiciled in and with its principal place of business in Houston, Texas.  Otherwise the allegations of Paragraph 5 of the Complaint are denied.

6.     National Liability & Fire Insurance Company a/k/a National Fire & Liability Insurance Company is a foreign insurer, domiciled in Connecticut, with its principal place of business in Omaha, Nebraska.  Otherwise the allegations of Paragraph 6 of the Complaint are denied.

7.     Liberty Mutual Insurance Company is a foreign insurer, domiciled in Massachusetts, with its principal place of business in Boston, Massachusetts.  Otherwise the allegations of Paragraph 7 of the Complaint are denied.

8.      Great American Insurance Company of New York is domiciled in the State of New York, with its principal place of business in Cincinnati, Ohio.  Otherwise the allegations of Paragraph 8 of the Complaint are denied.

9.      Indemnity Insurance Company of North America is a foreign insurer, domiciled in Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.  Otherwise the allegations of Paragraph 9 of the Complaint are denied.

10.      Continental Insurance Company is a foreign insurer, domiciled in Pennsylvania, with its principal place of business in Chicago, Illinois.  Otherwise the allegations of Paragraph 10 of the Complaint are denied.

11.      Subject matter jurisdiction is admitted.

12.      It is admitted that venue is proper in this District.

13.      Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 13.

14.      Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 14.

15.      Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 15.

16.      Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 16.

17.      Bumbershoot Underwriters admit that they have received some communications from Frenkel's New York offices regarding the claims in suit.  However, Bumbershoot Underwriters deny that Frenkel provided any such communications to adjusters acting on behalf of Bumbershoot Underwriters prior to the filing of the Complaint.  Otherwise, Bumbershoot

3

Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 17.

18.     Underwriters Subscribing to Policy No. 06/663 admit the allegations in Paragraph 18 of the Complaint only to the extent that a certain written policy of insurance, designated as Policy No. 06/663, provides certain "Excess Marine General Liability" insurance to PTP with limits of $45 million excess of $1 million scheduled and any other underlying insurance, for the Policy Period from December 1, 2006 to December 1, 2007, subject to all said policy's written terms, conditions, warranties, and exclusions. Otherwise the allegations of Paragraph 18 of the Complaint are denied, as same do not fully reflect the terms of the insurance policy, which written contract is the best and only proper evidence of its contents and which written contract is hereby pled as if copied herein *in extenso*.

19.     Underwriters Subscribing to Policy No. 06/663 admit the allegations in Paragraph 19 of the Complaint only to the extent that a certain written policy of insurance, designated as Policy No. 06/663, is admitted to provide certain "Excess Marine General Liability" insurance to PTP with limits of $45 million excess of $1 million scheduled and any other underlying insurance, for the Policy Period from December 1, 2006 to December 1, 2007, subject to all said policy's written terms, conditions, warranties, and exclusions. Otherwise the allegations of Paragraph 19 of the Complaint are denied, as same do not fully reflect the terms of the insurance policy, which written contract is the best and only proper evidence of its contents and which written contract is hereby pled as if copied herein *in extenso*.

20.     The allegations of Paragraph 20 are admitted, subject to the written terms, conditions, warranties, exclusions and limits of liability of Policy No. 06/663, and the

Bumbershoot Underwriters signatory thereon may only be liable for their respective percentages, severally and not jointly, and not one for the other, in all circumstances including insolvency.

21.      The allegations of Paragraph 21 of the Complaint are denied, as same do not fully reflect the terms of the Primary Marine Liabilities Policy No. 06/662 or Bumbershoot Policy No. 06/663, which written contracts are the best and only proper evidence of their contents and which written contracts are hereby pled as if copied herein *in extenso*.

22.      Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 22.

23.      Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 23.

24.      Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 24.

25.      Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 25.

26.      Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 26.

27.      Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 27.

28.      Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 28.

29.      Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 29.

30.     Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 30.

31.     The allegations of Paragraph 31 of the Complaint are denied.

32.     Bumbershoot Underwriters lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 32.

33.     The allegations of Paragraph 33 of the Complaint are denied.

34.     The allegations of Paragraph 34 of the Complaint are denied.

35.     The allegations of Paragraph 35 of the Complaint are denied.

## AS TO THE FIRST CLAIM FOR RELIEF

36.     The allegations of Paragraph 36 of the Complaint merely constitute recitation of prior allegations, to which Defendants' responses are also reiterated, as if copied *in extenso* herein.

37.     The allegations of Paragraph 37 of the Complaint are denied.

38.     The allegations of Paragraph 38 of the Complaint are denied.

39.     The allegations of Paragraph 39 of the Complaint are denied.

## AS TO THE SECOND CLAIM FOR RELIEF

40.     The allegations of Paragraph 40 of the Complaint merely constitute recitation of prior allegations, to which Defendants' responses are also reiterated, as if copied *in extenso* herein.

41.     The allegations of Paragraph 41 of the Complaint are conclusions of law which do not call for answer by these Defendants.   Should it be determined that a response to said allegations is required, they are denied.

6

42.    The allegations of Paragraph 42 of the Complaint are conclusions of law which do not call for answer by these Defendants.    Should it be determined that a response to said allegations is required, they are denied.

### BUMBERSHOOT UNDERWRITERS' SEPARATE DEFENSES

### FIRST SEPARATE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND SEPARATE DEFENSE

The claims asserted in the Complaint are barred by the failure to join all interested, required, necessary and/or indispensable parties or claims to this action, including the Underwriters subscribing to a certain Policy of Insurance and/or Reinsurance designated as Policy No. 507/P06DR01570.

### THIRD SEPARATE DEFENSE

The allegations of liability set forth in the Complaint are premature and/or non-justiciable, as none of the asserted third-party liabilities or suits have been liquidated, reduced to judgment, or otherwise resolved with the third-party claimants.    Therefore, there are no "damages" as defined in the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 to indemnify or "pay on behalf of" PTP.

### FOURTH SEPARATE DEFENSE

PTP has, itself, denied liability and responsibility for and asserted contractual defenses against the claims allegedly asserted against it by Castor Petroleum.    Therefore, even if Castor Petroleum's alleged claims resulted from a covered occurrence and were not otherwise excluded from coverage under Marine Excess Liability ("Bumbershoot") Policy No. 06/663, which is

denied, Castor Petroleum presents no claim for damages as defined in the said Policy of insurance.

**FIFTH SEPARATE DEFENSE**

A condition precedent to assertion of any claim for coverage under Marine Excess Liability ("Bumbershoot") Policy No. 06/663, *i.e.,* exhaustion of all applicable underlying insurance, has not been established. In particular, the full amount of the applicable deductible of $50,000 has not been paid by PTP and the coverage provided by that certain Policy of Insurance and/or Reinsurance designated as Policy No. 507P06DR01570 has not been shown to have been properly exhausted.

**SIXTH SEPARATE DEFENSE**

The Primary Marine Comprehensive Liability Policy No. 06/662 contains Pollution Exclusions, and/or other pertinent exclusions, which also limit and preclude coverage available under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 for the claims at issue, which exclusions specify in pertinent part:

* * *

Notwithstanding anything to the contrary contained herein, it is expressly understood and agreed that this insurance does not cover:

Liability for any bodily and/or personal injury to or illness or death of any person or loss of, damage to, or loss of use of property directly or indirectly caused by or arising out of seepage into or onto and/or pollution and/or contamination of air, land, water, and/or any other property and/or any person irrespective of the cause of the seepage and/or pollution and/or contamination, and whenever occurring.

However, this exclusion shall not apply provided that the Assured establishes that all of the following conditions have been met:

A.    The accident was caused by some intervening event, was accidental and was neither expected nor intended by the Assured.

B.    The accident is identified as commencing at a specific time and date during the terms of this insurance.

8

C.    The accident becomes known to the Assured or the Assured's operating partner or coventurer within 14 days after its commencement, and is reported to Underwriters within 90 days thereafter.

D.    The accident did not result from the Assured's intentional and willful violation of any government statute, rule or regulation.

\* \* \*

THIRD PARTY OIL EXCLUSIONS
'OCCURRENCE' - 1.12.88 (AMENDED)

Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy is subject to the following exclusions and that this policy shall not apply to:

\* \* \*

7.    <u>SEEPAGE, POLLUTION AND CONTAMINATION EXCLUSION</u>

~~Liability for any bodily and/or personal injury to or illness or death of any person or loss of, damage to, or loss of use of property directly or indirectly caused by or arising out of seepage into or onto and/or pollution and/or contamination of air, land, water, and/or any other property and/or person irrespective of the cause of the seepage and/or pollution and/or contamination, and whenever occurring.~~

The words 'loss of, damage to, or loss of use of property' as used in this exclusion include, but are not limited to:

a.    The cost of evaluating and/or monitoring and/or controlling and/or removing and/or nullifying and/or cleaning-up seeping and/or polluting and/or contaminating substances and materials;

b.    Loss of, damage to or loss of use of property directly or indirectly resulting from sub-surface operations of the Assured; and

c.    Removal of, loss of, or damage to sub-surface oil, gas or any other substance or material.

8.    <u>WASTE DISPOSAL OPERATIONS</u>

Liability for any bodily and/or personal injury to or illness or death of any person or damage to or loss of use of property directly or indirectly caused by or arising from:

9

a.    Waste or disposal sites which were, or currently are, owned, operated, or used by the Assured or were or currently are utilized by others acting for and/or on behalf of the Assured.

b.    Disposal, dumping, conveyancing, carriage, or transportation of any seeping and/or polluting and/or contaminating substances or materials or waste substance(s) or waste materials(s) of whatsoever nature; and

c.    Evaluating and/or monitoring and/or controlling and/or removing and/or nullifying and/or cleaning-up seeping and/or polluting and/or contaminating substances and materials.

The words 'loss of, damage to, or loss of use of property' as used in this exclusion include, but are not limited to:

a.    The cost of evaluating and/or monitoring and/or controlling and/or removing and/or nullifying and/or cleaning-up seeping and/or polluting and/or contaminating substances and materials;

b.    Loss of, damage to or loss of use of property directly or indirectly resulting from sub-surface operations of the Assured; and

c.    Removal of, loss of, or damage to sub-surface oil, gas, or any other substance or material.

* * *

### SEVENTH SEPARATE DEFENSE

The Primary Marine Comprehensive Liability Policy No. 06/662 contains Exclusions which effectively limit and preclude coverage available under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 for the claims at issue, which exclusions specify in pertinent part:

Notwithstanding anything to the contrary contained herein, it is expressly understood and agreed that this insurance does not cover:

i)    Loss and/or damage to owned, rented, leased or hired equipment, plant, buildings, property or vessels;

* * *

v)    Loss or damage caused by or resulting from:

10

* * *

(c)    Insurrection, rebellion, revolution, civil war, usurped power or action taken by government authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

* * *

vii)    Liability arising from delay, loss of market and/or consequential loss therefrom.

* * *

## EIGHTH SEPARATE DEFENSE

The Primary Marine Comprehensive Liability Policy No. 06/662 contains Exclusions which effectively limit and preclude coverage available under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 for the claims at issue, which exclusions specify in pertinent part:

* * *

Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy is subject to the following exclusions and that this policy shall not apply to:

* * *

16.    CARE, CUSTODY AND CONTROL

Any liability whatsoever for damage to or loss of use of:

a.    Property owned or occupied or rented to the Assured;

b.    Property used by the Assured; or

c.    Property in the care, custody and control of the Assured or over which the Assured is for any purpose exercising physical control.

* * *

11

## NINTH SEPARATE DEFENSE

The Primary Marine Comprehensive Liability Policy No. 06/662 contains Exclusions which effectively limit and preclude coverage available under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 for the claims at issue, which exclusions specify in pertinent part:

* * *

Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy is subject to the following exclusions and that this policy shall not apply to:

* * *

18.     FAILURE TO SUPPLY

~~Any liability arising out of the Assured's failure to supply or from fluctuations in supply of any gas, oil, electricity, chemicals, products, material or service.~~

This exclusion is deleted only as respects power that PTP provides at the Atlantic Terminal (Chiriquí Grande). The deletion of this exclusion is not applicable to power that PTP provides cities or towns or otherwise outside their terminals.

* * *

## TENTH SEPARATE DEFENSE

The Primary Marine Comprehensive Liability Policy No. 06/662 contains Exclusions which effectively limit and preclude coverage available under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 for the claims at issue, which exclusions specify in pertinent part:

* * *

Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy is subject to the following exclusions and that this policy shall not apply to:

* * *

24.     HEALTH HAZARD

Any liability for personal injury and/or Property Damage made by or on behalf of any person or persons directly or indirectly <u>on account of continuous, intermittent or repeated exposure to, ingestion, inhalation, or absorption of,</u> any substance, material, product, waste, emission, noise or environmental disturbance where the Assured is or may be liable as a result of the manufacture, production, extraction, sale, handling, utilization, distribution, disposal or creation by or on behalf of the Assured of such substance, material, product, waste, emission, radioactive substance, noise or environmental disturbance.

\* \* \*

### ELEVENTH SEPARATE DEFENSE

The Primary Marine Comprehensive Liability Policy No. 06/662 contains the following

pertinent wording:

9.  OTHER INSURANCE

This insurance shall be primary to other insurance inuring to the benefit of the insured except where perils are also covered under any charterer's liability policy issued to the insured.  In such a case the charterer's policies shall be primary and this policy shall not be applicable.

Claims asserted by PTP herein are or may be covered by insurance other than the Primary

Marine Comprehensive Liability Policy No. 06/662, which other insurance should respond as

primary and/or as co-insurance with primary, all of which underlying insurance must be, but has

not or may not have been properly exhausted before the Marine Excess Liability

("Bumbershoot") Policy No. 06/663 may be called upon to respond to claims by PTP.

### TWELFTH SEPARATE DEFENSE

The Marine Excess Liability ("Bumbershoot") Policy No. 06/663 only grants coverage in

excess of coverage provided by Underlying insurance and subject to said Bumbershoot Policy's

own written terms, conditions, warranties, and exclusions as follows:

\* \* \*

The Policy shall [pay on behalf of] the Insured with respect to the operations listed in Item 7 of the Declarations for the following (including such expenses

13

listed in the definition of "Ultimate Net Loss") [as amended by Endorsement No. 3]:

> 1.    All Protection and Indemnity risks covered by the underlying Protection and Indemnity Insurance or which are absolutely or conditionally undertaken by The United Kingdom Mutual Steam Ship Assurance Association Limited.

> 2.    General average, marine collision liabilities, salvage, salvage charges and related sue and labor arising from any cause whatsoever.

> 3.    All other sums which the Insured shall become legally liable to pay as damages on account of:

> > a.    personal injuries, including death at any time resulting therefrom, or

> > b.    property damage caused by or arising out of each occurrence happening anywhere in the world.

* * *

<u>THIRTEENTH SEPARATE DEFENSE</u>

The written agreement between the parties, evidenced by Marine Excess Liability ("Bumbershoot") Policy No. 06/663, defines the scope of coverage for "…sums which the Insured shall become legally liable to pay as damages…" in part, as follows:

* * *

> H.    "Damages" shall mean the following amounts for which the Insured becomes legally obligated to pay, including those amounts attributable to liability assumed by the Insured under a contract or agreement:

> > 1.    compromise settlements,

> > 2.    hospital, medical and funeral charges and

> > 3.    all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, or interest expenses, for doctors, lawyers, nurses and investigators and other persons and for litigation, settlement adjustment and investigation of claims and suits where same are paid as a consequence of any occurrence covered hereunder, excluding, however, the salaries of the Insured's employees and permanent

14

general office overhead and also excluding any part of such
expenses for which the Insured is covered by the terms of other
insurance.
                                * * *

Some or all of the claims against PTP do not seek "damages" as defined above.

### FOURTEENTH SEPARATE DEFENSE

The written agreement between the parties, evidenced by Marine Excess Liability

("Bumbershoot") Policy No. 06/663, further defines the scope of coverage granted by definition

of the pre-requisite for coverage of an "Occurrence":

                                * * *

L.      "Occurrence" shall mean an event or a continuous or repeated
exposure to conditions which unintentionally causes injury, damages or
destruction during the Policy Period which was unexpected by the Insured. Any
number of such injuries, damage, or destruction resulting from a common cause
or from exposure to substantially the same conditions shall be deemed to result
from one occurrence.

The word "unintentionally" used in the above "occurrence" definitions
shall not apply to claims arising out of personal injuries.

                                * * *

Some or all of the claims against PTP do not arise from an "occurrence" as defined above.

### FIFTEENTH SEPARATE DEFENSE

The written agreement between the parties, evidenced by Marine Excess Liability

("Bumbershoot") Policy No. 06/663, further defines the scope of coverage granted and/or

excluded by said written Policy, in part, by providing definitions of "Pollution Liability" and

"Property Damage":

                                * * *

N.      "Pollution Liability" shall mean any liability or expense directly or
indirectly in consequence of the actual or potential discharge, dispersal, release, or
escape of smoke vapors, soot, fumes, acids, alkalis, petroleum products or
derivatives, liquids or gases, waste materials, sewerage or other toxic chemicals,

irritant contaminants or pollutants into or upon land, atmosphere or any watercourse or body of water.

O.    "Property Damage" shall mean physical loss of or direct physical damage to or destruction of tangible property (other than property owned or occupied by the Named Insured).

* * *

## SIXTEENTH SEPARATE DEFENSE

The Marine Excess Liability ("Bumbershoot") Policy No. 06/663 expressly excludes coverage for the claims at issue asserted by PTP in its Complaint, to wit:

* * *

III. Exclusions

A. This Insurance Does Not Apply To:

* * *

2.    any claims based upon any intentional non-compliance with any statute or regulations except to the extent such claims are for damages occasioned by actual or alleged bodily injury or property damage.

3.    liability of the Insured for any fines or penalties incurred through the intentional act of that Insured.

* * *

5.    any claims made by a national, state or local Government sub-divisions or agencies thereof, unless such claims be for damages occasioned by actual or alleged personal injury (fatal or otherwise) or property damage.

* * *

10.    any liability for, or any loss, damage, injury or expense caused by, resulting from or incurred by reason of any one or more of the following:

a.    capture, seizure, arrest, taking, restraint, detainment, confiscation, preemption, requisition or naturalization, or the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise;

* * *

11.    Any liability for, or any loss, damage, injury or expense caused by, resulting from or incurred by reason of:

a. any obligation to pay fines, penalties or exemplary, or punitive damages including treble damages or any other damages resulting from the multiplication of compensatory damages.

* * *

16

d. any liability or expense arising out of the ownership, use or operation of drilling rigs, drilling barges, drilling tenders, platforms, flow lines, gathering stations and/or pipe lines, but this exclusion shall not apply to craft serving the foregoing such as crew, supply, or utility boats, tenders, barges or tugs *or to the Insured's operations as a terminal operator and/or owner, or to the trading operations of the Insured*. [as amended by Endorsement No. 2].

* * *

g. pollution liability.

* * *

o. liability arising out of the following activities of the Insured unless coverage is provided in the Underlying Insurance, and then coverage hereunder shall only operate as excess of such coverage:

* * *

(3) for damage, loss or expense to property of others which occurred while in the care, custody or control of the Insured hereunder;

(4) assumed under contract;

* * *

It is agreed that Exclusions 1ld, 1lg, 1li, 1lj as shown in the policy, shall not apply if coverage is valid and collectible in the underlying insurance as scheduled in this policy, subject to all other items and conditions of this policy. [as amended by Endorsement No. 3].

* * *

## SEVENTEENTH SEPARATE DEFENSE

The assistance and cooperation of PTP and its Underlying Insurers are conditions of coverage under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 as expressly set forth therein, to wit:

* * *

B. Assistance and Co-operation

The Company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Insured, but the Company shall have the right and shall be given the opportunity to associate with the Insured or the Insured's Underlying Insurers or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves or appears reasonably likely to involve the Company, in which event the Insured, the Underlying Insurers and the Company shall co-operate in all things in the defense of such claim, suit or proceeding.

* * *

17

PTP has or may have failed to assist or cooperate with Bumbershoot Underwriters as required under Marine Excess Liability ("Bumbershoot") Policy No. 06/663.

**EIGHTEENTH SEPARATE DEFENSE**

The coverage provided by Marine Excess Liability ("Bumbershoot") Policy No. 06/663 is and shall be in excess of and shall not contribute with any other insurance, as specified in said Policy, to wit:

* * *

M. Other Insurance

If other valid and collectible insurance is available to the Insured covering a loss also covered by this Policy, other than insurance that is written to be specifically in excess of the insurance afforded by this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance, either as double insurance or otherwise.

Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of other insurance.

* * *

Claims asserted by PTP herein are or may be covered by insurance to which Marine Excess Liability ("Bumbershoot") Policy No. 06/663 is excess insurance, which underlying insurance must be, but has not or may not have been properly exhausted before the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 may be called upon to respond to claims by PTP.

**NINETEENTH SEPARATE DEFENSE**

On or about October 26, 2007, Underwriters Subscribing to Marine Excess Liability ("Bumbershoot") Policy No. 06/663 issued a detailed reservation of rights letter to PTP setting forth and preserving, during further investigation and efforts to adjust PTP's claims, all of the foregoing Policy terms, conditions, warranties, definitions, and exclusions, which defenses are incorporated herein by reference.

18

### TWENTIETH SEPARATE DEFENSE

Bumbershoot Underwriters deny liability under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 for all damage, remediation, repair, and/or loss of use of the Assured's own property and property owned, rented, leased, or otherwise occupied or in the care custody and control of the Assured as the Assured cannot be legally liable to pay damages to itself.

### TWENTY-FIRST SEPARATE DEFENSE

Bumbershoot Underwriters further aver that the Complaint of PTP is premature because, on information and belief, the government of Panama has not yet completed its investigation of the underlying cause of the February 4, 2007 oil spill. Therefore, it has not yet been determined whether the spill resulted from violations of applicable law or regulations which could preclude coverage for all aspects of the oil spill incident.

### TWENTY-SECOND SEPARATE DEFENSE

Bumbershoot Underwriters further aver that no coverage is provided and same has been properly denied for punitive, exemplary, and/or multiplied damages and for claims and/or damages arising or resulting from "…seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority…" under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 and applicable public policy.

### TWENTY-THIRD SEPARATE DEFENSE

Bumbershoot Underwriters further aver that there is no obligation to defend PTP in respect of claims referenced in PTP's Complaint and/or others arising from the February 4, 2007 oil spill incident under Marine Excess Liability ("Bumbershoot") Policy No. 06/663.

## TWENTY-FOURTH SEPARATE DEFENSE

Bumbershoot Underwriters further aver that Plaintiff's alleged liability and payments made by or on Plaintiff's behalf are the result of Plaintiff's own fault, neglect, carelessness, inattention to duty, failure to assert defenses to said liability which were known to and/or available to Plaintiff and/or resulted from business decisions of Plaintiff, regardless and in derogation of Plaintiff's duties and interests under the above-referenced Primary and Bumbershoot policies of insurance.

## TWENTY-FIFTH SEPARATE DEFENSE

Bumbershoot Underwriters contend that the liability alleged by Plaintiff was caused by the fault and/or neglect and/or malpractice and/or malfeasance of other parties and/or third parties, for whom Bumbershoot Underwriters are not responsible.

## TWENTY-SIXTH SEPARATE DEFENSE

Should any liability be assessed against Bumbershoot Underwriters, which is expressly denied, Bumbershoot Underwriters plead that they each can only be held responsible for their separate percentage shares of any liability determined to lie against Bumbershoot Underwriters, which liability is expressly denied, and that Bumbershoot Underwriters' liability, if any, is in no event joint or solidary, but separate and limited by the terms, exclusions, warranties, conditions, and limits of Marine Excess Liability ("Bumbershoot") Policy No. 06/663.

## TWENTY-SEVENTH SEPARATE DEFENSE

Bumbershoot Underwriters are without liability herein under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663, as neither a proper, complete or sufficient claim and/or proof of loss in connection with the alleged underlying loss, nor any direct claim by any

other or third party allegedly suffering damage within the policy coverage, has been presented to Bumbershoot Underwriters.

### TWENTY-EIGHTH SEPARATE DEFENSE

Bumbershoot Underwriters are without liability herein under Marine Excess Liability ("Bumbershoot") Policy No. 06/663, as the subject policy only provided indemnity for those sums which PTP, the Assured, shall become legally liable to pay as damages on account of property damage or personal injury caused by or arising out of an occurrence, not payments made in the regular course of business or as a business or public relations expediency by PTP or others acting on its behalf.

### TWENTY-NINTH SEPARATE DEFENSE

Bumbershoot Underwriters affirmatively aver that they acted reasonably and lawfully in the handling of the claims at issue based on the information submitted and the policy provisions.

### THIRTIETH SEPARATE DEFENSE

Plaintiff's claims are barred by the terms, conditions, exclusions and other provisions contained in the Marine Excess Liability ("Bumbershoot") Policy No. 06/663, and those to which the foregoing policy follows form.

### THIRTY-FIRST SEPARATE DEFENSE

Plaintiff's claims are barred by Plaintiff's failure to comply with the notice conditions contained in the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 and/or by the Plaintiff's failure to provide notice as required in the Primary Marine Comprehensive Liability Policy No. 06/662 in accordance with the Pollution Exclusions, which also limit and preclude

coverage available under the Marine Excess Liability ("Bumbershoot") Policy No. 06/663 for the claims at issue.

### THIRTY-SECOND SEPARATE DEFENSE

Plaintiff's claims are barred to the extent that Plaintiff negligently or intentionally failed to disclose, concealed, or made false, fraudulent, or misleading representations in procuring Marine Excess Liability ("Bumbershoot") Policy No. 06/663 from the Bumbershoot Underwriters.

### THIRTY-THIRD SEPARATE DEFENSE

Plaintiff has failed to set forth its claims with sufficient particularity as to enable Bumbershoot Underwriters to determine all applicable separate defenses. Bumbershoot Underwriters, therefore, reserve their rights to assert any additional defenses that may be applicable, to withdraw any defenses that are found to be inapplicable and to more specifically assert separate defenses once the precise nature of the claims is ascertained through discovery and further investigation.

### PRAYER FOR RELIEF

**WHEREFORE**, Bumbershoot Underwriters respectfully request that this Court grant judgment as appropriate in their favor as follows:

a.   Dismissing all claims against Bumbershoot Underwriters with prejudice, and award them all costs, disbursements and attorneys' fees with respect to this action;

b.   That Bumbershoot Underwriters are not obligated to defend and/or reimburse defense costs or to indemnify Plaintiff in connection with the claims at issue;

c.   That Plaintiff is not entitled to the relief requested in the Complaint; and

    d.    That this Court grant such other and further relief as this Court may deem just, proper and equitable.

Dated: February 14, 2008

                                Respectfully submitted,

                                RIVKIN RADLER LLP

By:             /s/

                                Gary D. Centola [GC-3478]
                                Michael A. Kotula [MK-7455]
                                926 RexCorp Plaza, West Tower
                                Uniondale, New York 11556-0926
                                (516) 357-3000

                                Attorneys for Defendants
                                HOUSTON CASUALTY COMPANY,
                                NATIONAL LIABILITY & FIRE INSURANCE
                                COMPANY A/K/A NATIONAL FIRE &
                                LIABILITY INSURANCE COMPANY,
                                LIBERTY MUTUAL INSURANCE COMPANY,
                                GREAT AMERICAN INSURANCE COMPANY
                                OF NEW YORK, INDEMNITY INSURANCE
                                COMPANY OF NORTH AMERICA, AND
                                CONTINENTAL INSURANCE COMPANY

Of counsel:

Jay Lonero
R. Jeffrey Bridger
LARZELERE PICOU WELLS
   SIMPSON LONERO, LLC
Two Lakeway Center, Suite 1100
3850 N. Causeway Blvd.
Metairie, Louisiana  70002
(504) 834-6500

**<u>JURY DEMAND</u>**

Defendants, Houston Casualty Company, National Liability & Fire Insurance Company

a/k/a National Fire & Liability Insurance Company, Liberty Mutual Insurance Company, Great

American Insurance Company of New York, Indemnity Insurance Company of North America,

and Continental Insurance Company, hereby demand trial by jury as to all issues so triable.

Dated: February 14, 2008

RIVKIN RADLER LLP

By:    _____/s/_____
Gary D. Centola [GC-3478]
Michael A. Kotula [MK-7455]
926 RexCorp Plaza, West Tower
Uniondale, New York 11556-0926
(516) 357-3000

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of February, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service. I further certify that I have served a copy of the foregoing pleading on all parties to this proceeding not registered for electronic service, by e-mailing, faxing, and/or mailing the same by United States mail, properly addressed and first class postage prepaid.


_____/s/_____
Michael A. Kotula

Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| PETROTERMINAL DE PANAMA, S.A, | NO. 08 CV 00547 (JSR) |
| Plaintiff, | |
| vs. | **INITIAL DISCLOSURES** |
| HOUSTON CASUALTY COMPANY, NATIONAL LIABILITY & FIRE INSURANCE COMPANY a/k/a NATIONAL FIRE & LIABILITY INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, and CONTINENTAL INSURANCE COMPANY, | |
| Defendants. | |

Pursuant to Fed. R. Civ. P. 26(a), plaintiff Petroterminal de Panama, S.A. ("PTP") submits its initial disclosures to defendants Houston Casualty Company, National Liability & Fire Insurance Company a/k/a National Fire & Liability Insurance Company, Liberty Mutual Insurance Company, Great American Insurance Company of New York, Indemnity Insurance Company of North America, and Continental Insurance Company ("Insurers").

These disclosures are based upon information readily available to PTP. By making these disclosures, PTP does not waive its right to object to the production of or the introduction into evidence of any document or tangible thing on the basis of any privilege, the work product doctrine, relevancy, undue burden, or any other applicable objection. PTP reserves the right to rely upon any documents and testimony disclosed during the course of discovery by the Insurers or any third party.

DOCSNY.296620.03

I.  PERSONS LIKELY TO HAVE DISCOVERABLE INFORMATION

In accordance with Fed. R. Civ. P. 26(a)(1)(A), PTP hereby identifies the following individuals who have relevant knowledge that PTP may rely upon to support its claims in this matter:

A.  Peter Ripp
    Vice President
    Petroterminal de Panama, S.A.
    25 Melville Park Road
    Melville, NY 11747-0398
    Telephone: 631-293-4700

Mr. Ripp has knowledge concerning the claim that Castor Petroleum Ltd. ("Castor") has asserted against PTP for reimbursement of revenues that Castor allegedly lost in consequence of the February 2007 oil spill ("Oil Spill") at the Chiriqui Grande facility.

B.  H. Brant Brown
    President
    Northville Industries Corp.
    25 Melville Park Road
    Melville, NY 11747-0398
    Telephone: 631-293-4700

Mr. Brown has knowledge concerning the circumstances of the Oil Spill and the subsequent investigation into the causes of the Oil Spill. Mr. Brown is also knowledgeable regarding the resulting oil pollution damage and the scope and conduct of the ensuing environmental cleanup and the nature of many of the expenses for which PTP seeks coverage in this action.

C.  Richard Roberts
    Director, Lucius Pitkin, Inc.
    304 Hudson Street
    New York, NY 10013
    Telephone: 212-233-2737

Mr. Roberts conducted the investigation into the causes of the Oil Spill and is knowledgeable regarding this issue.

DOCSNY.296620.03

       D.  Luis Roquebert
           Manager, PTP's Chiriquí Grande Facility
           Petroterminal de Panama, S.A.
           Panama City
           Republic of Panama
           Telephone:  507-263-7777

Mr. Roquebert has knowledge concerning the circumstances of the Oil Spill and the subsequent investigation of the causes of the Oil Spill.  Mr. Roquebert is also knowledgeable regarding the resulting oil pollution damage, the scope and conduct of the ensuing environmental cleanup, and the nature of the expenses for which PTP seeks coverage in this action.

       E.  Pedro Gonzalez
           Operational Manager, PTP's Chiriquí Grande Facility
           Petroterminal de Panama, S.A.
           Puerto Armuelles Chiriquí
           Republic of Panama
           Telephone:  507-770-7246

Mr. Gonzalez has knowledge concerning the circumstances of the Oil Spill and the subsequent investigation into the causes of the Oil Spill.  Mr. Gonzalez is also knowledgeable regarding the resulting oil pollution damage, the scope and conduct of the ensuing environmental cleanup, and the nature of the expenses for which PTP seeks coverage in this action.

       F.  Jaime Perez
           Industrial Security and Environmental Manager --
            PTP's Chiriquí Grande Facility
           Petroterminal de Panama, S.A.
           Chiriqui Grande, Bocas del Toro
           Republic of Panama
           Telephone:  507-756-9125

Mr. Perez has knowledge concerning the circumstances of the Oil Spill and the subsequent investigation into the causes of the Oil Spill. Mr. Perez is also knowledgeable regarding the resulting oil pollution damage, the scope and conduct of the ensuing environmental cleanup, and the nature of the expenses for which PTP seeks coverage in this action.

3

  G.  Diego de la Guardia
    Galindo, Arias & Lopez
    Scotia Plaza Building
    Federico Boyd Avenue
    No. 18 and 51st Street
    Panama 5, Republic of Panama
    Telephone: 507-303-0303

Mr. de la Guardia coordinates the defense of the underlying civil lawsuits and other actions and proceedings that have been brought against PTP in connection with the Oil Spill ("Underlying Actions"). He has knowledge concerning all matters relevant to the Underlying Actions, including PTP's legal obligations for the remediation of pollution damage resulting from the Oil Spill and the Panamanian maritime court's June 2007 order that prohibited PTP from transporting oil from the Chiriquí Grande facility during the 38-day period when that order was in effect.

  H.  Joseph Valenza
    Executive Vice President
    Frenkel & Co., Inc.
    350 Hudson Street
    New York, NY 10014
    Telephone: 212-488-1828

Mr. Valenza has knowledge concerning the issuance of the relevant PTP primary and excess marine liability insurance policies, PTP's provision of notice under those policies, and the Insurers' handling of the insurance claims that are the subject of this litigation.

Messrs. Ripp, Brown, Roquebert, Gonzalez, Perez and de la Guardia should be contacted through the counsel that has appeared for PTP in this litigation. Mr Valenza should be contacted through John K. Bradley, Esq., Executive Vice President and General Counsel for Frenkel & Co., Inc., 350 Hudson Street, New York, New York 10014 (212-488-1840).

4

DOCSNY.296620.03

## II.    DESCRIPTION OF RELEVANT DOCUMENTS

In accordance with Fed. R. Civ. P. 26(a)(1)(B), PTP hereby identifies the following categories of documents in its possession that PTP may rely upon to support its claims in this matter.

A.    Marine Liability Insurance Policy Nos. 06/662 and 06/663

B.    Documents Maintained at NIC Holding Corporation Headquarters in Melville, New York

1.    Copies of the relevant primary and excess marine liability insurance policies and documents regarding the issuance and purchase of the same;

2.    Communications and other documents relating to Castor's claim against PTP for reimbursement of revenues that Castor asserts that it lost in consequence of the Oil Spill;

3.    Communications and other documents relating to the primary and excess marine liability insurers' handling of the insurance claims that are the subject of this litigation;

4.    Documents relating to the Oil Spill, the resulting environmental cleanup and the Underlying Actions; and

5.    Invoices representing the costs of defending the Underlying Actions and related expenses.

C.    Documents Maintained at PTP's Chiriquí Grande, Panama City, and David, Panama Offices

1.    Reports, studies, memoranda and other documents relating to the investigation of the causes of the Oil Spill;

2.    Reports, studies and memoranda relating to the scope and location of the pollution damage that resulted from the Oil Spill, including the migration of the oil to the bay and third-party coastal areas;

5

3. Reports, memoranda, correspondence and e-mails identifying the nature and scope of the activities that PTP undertook to remediate the Oil Spill, including documents identifying or relating to:

    a.  fuel, equipment and supplies used in the environmental cleanup;

    b.  environmental consulting and remediation companies, construction and other contractors, and temporary personnel involved in the cleanup and the services that they provided in connection with the cleanup;

    c.  transportation, housing, lighting, food and other arrangements made (i) for the benefit of the personnel involved in the cleanup efforts, (ii) to facilitate the provision of supplies or equipment for use in the cleanup, or (iii) to expedite the progress of the cleanup; and

    d.  the nature and scope of the cleanup activities that PTP undertook within the boundaries of the Chiriqui Grande facility and the purpose for which those activities were conducted.

6. Invoices that reflect the environmental cleanup and related mitigation expenses for which PTP seeks coverage in this litigation and documentation regarding payment of those invoices;

7. Memoranda, correspondence, e-mails and other documents relating to PTP's obligation under Panamanian law to remediate the Oil Spill, including communications from and to Panamanian authorities in connection with the Oil Spill;

8. Memoranda, correspondence, e-mails and other documents relating to actual or alleged damage to the bay or to coastal property owned, leased, rented or occupied by third parties and any actual, threatened or potential third-party claims against PTP for the alleged property damage and/or any allegedly resulting monetary or other losses;

6

9. Memoranda, correspondence, e-mails and other documents relating to actual or alleged bodily injuries sustained by third parties allegedly in consequence of the Oil Spill and any actual, potential or threatened claims against PTP for the alleged bodily injuries and/or any allegedly resulting monetary or other losses;

10. Memoranda, correspondence, e-mails and other documents relating to PTP's efforts to mitigate future losses and/or reduce its potential liability exposure in connection with future claims for property damage or bodily injury allegedly attributable to the Oil Spill;

11. Memoranda, pleadings, motion papers and other documents relating to the civil lawsuits that have been filed in Panamanian courts against PTP in consequence of the Oil Spill, including any documents relating to the June 2007 sequestration order issued by the Panamanian maritime court;

12. Correspondence, e-mails and other documents pertaining to PTP's claims under PTP's liability and property insurance policies for its Oil Spill-related losses, including communications with Cunningham & Lindsey Ltd., the adjusters for certain PTP insurers.

D. Documents Maintained at the Offices of the Following Law Firms, Which Represent PTP in the Underlying Actions

1. Galindo Arias & Lopez
   Scotia Plaza Building
   Federico Boyd Avenue
   Panama City
   Republic of Panama
   Telephone: 507-303-0303

a. Pleadings, discovery requests and responses, and motion and other papers primarily relating to civil and administrative Underlying Actions; and

b. Documents relating to the environmental cleanup of the Oil Spill and PTP's legal responsibilities for the same, including communications with

7

DOCSNY.296620.03

governmental officials concerning the scope and conduct of the cleanup

and the scope and nature of PTP's legal obligations for the cleanup.

2. DeCastro & Robles
   Scotia Plaza Building
   Federico Boyd Avenue
   Panama City
   Republic of Panama
   Telephone: 507-263-6622

a. Pleadings, discovery requests and responses, and motion and other papers

primarily relating to Underlying Actions filed in Panamanian maritime

courts; and

b. Documents relating to Oil Spill and the ensuing environmental cleanup.

3. Arjona, Figueroa, Arrocha & Diaz
   Omega Building
   Samuel Lewis Avenue & 53rd Street
   Obarrio
   Panama City
   Republic of Panama
   Telephone: 507-214-8873

a. Pleadings, discovery requests and responses, and motion and other papers

primarily relating to Underlying Actions involving alleged "crimes to the

environment"; and

b. Documents relating to the Oil Spill and the ensuing environmental

cleanup.

## III.    DAMAGE COMPUTATION

In accordance with Fed. R. Civ. P. 26(a)(1)(C), the following are PTP's approximate

present damages:  for liability payments, $3,365,546.66, plus interest, and for defense costs,

$552,497, plus interest.  PTP has already provided counsel for the Insurers with the invoices that

identify the liability payments for which PTP seeks coverage in this action.

DOCSNY.296620.03

Dated:  March 13, 2008

                                DICKSTEIN SHAPIRO LLP


                                By:  _____/s/ John P. Winsbro_____
                                      Stephen A. Dvorkin (SD-3401)
                                      John P. Winsbro (JW-5211)
                                1177 Avenue of the Americas
                                New York, New York  10036
                                Tel.: (212) 277-6500
                                Fax: (212) 277-6501

                                Attorneys for Plaintiff
                                Petroterminal de Panama, S.A.

DOCSNY.296620.03

Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| PETROTERMINAL DE PANAMA, S.A, | x<br>:<br>: | CIVIL ACTION NO:<br>08 CV 00547 (JSR) |
| Plaintiff, | :<br>:<br>: |  |
| vs. | :<br>: |  |
| HOUSTON CASUALTY COMPANY,<br>NATIONAL LIABILITY & FIRE INSURANCE<br>COMPANY a/k/a NATIONAL FIRE &<br>LIABILITY INSURANCE COMPANY,<br>LIBERTY MUTUAL INSURANCE COMPANY,<br>GREAT AMERICAN INSURANCE COMPANY<br>OF NEW YORK, INDEMNITY INSURANCE<br>COMPANY OF NORTH AMERICA, and<br>CONTINENTAL INSURANCE COMPANY, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |  |
| Defendants. | :<br>x |  |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANTS
HOUSTON CASUALTY COMPANY, NATIONAL LIABILITY & FIRE INSURANCE
COMPANY A/K/A NATIONAL FIRE & LIABILITY INSURANCE COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY, GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK, INDEMNITY INSURANCE COMPANY OF NORTH
AMERICA AND CONTINENTAL INSURANCE COMPANY**

Plaintiff, Petroterminal de Panama, S.A., by and through its undersigned counsel,

hereby propounds Plaintiff's First Set of Interrogatories directed to the defendant insurance

companies in this matter ("Insurers").  The Insurers are requested to serve a copy of their

responses upon Dickstein Shapiro LLP, 1177 Avenue of the Americas, New York, New York

10036-2714 within thirty (30) days after service thereof.

## DEFINITIONS

1.  "PTP" means plaintiff Petroterminal de Panama, S.A., and, where applicable,

its officers, directors, employees, partners, subsidiaries or affiliates.

1

2. "Insurers," "You," or "Your" mean defendants Houston Casualty Company, National Liability & Fire Insurance Company a/k/a National Fire & Liability Insurance Company, Liberty Mutual Insurance Company, Great American Insurance Company of New York, Indemnity Insurance Company of North America, and Continental Insurance Company and, where applicable, their officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

3. "Spill Occurrence" means the oil spill pollution incident that occurred on or about February 4, 2007 at PTP's Chiriqui Grande, Panama oil storage and transportation facility.

4. "Complaint" means the Complaint filed in this action on or about January 22, 2008 and any Amended Complaints thereafter.

5. "Bumbershoot Policy" means Marine Excess Liability Policy No. 06/663 issued to PTP for the December 1, 2006 – December 1, 2007 time period.

6. "Primary Policy" means Marine Comprehensive Liability Insurance Policy No. 06/662 issued to PTP for the December 1, 2006 – December 1, 2007 time period.

7. "Insurance Policies" means the Bumbershoot Policy and the Primary Policy as defined above.

8. "Identify" shall have the meaning set forth in Local Civil Rule 26.3(c)(3).

9. "Person" shall have the meaning set forth in Local Civil Rule 26.3(c)(6).

10. "Concerning" shall have the meaning set forth in Local Civil Rule 26.3(7).

11. "Representative" includes both the singular and plural and means:

   a. any past or present officer, director, partner, associate, employee, servant, agent, subsidiary, affiliate, legal counsel, or agent of a Person; and

2

b. any other Persons acting or purporting to act on behalf of, or in concert with such Persons, including, without limitation, insurance brokers or agents, auditors, actuaries, or consultants of any type.

## INSTRUCTIONS

1. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside its scope.

2. The past tense shall be construed to include the present tense and vice versa to make the Interrogatory inclusive rather than exclusive.

3. The use of the singular form of any word includes the plural, and vice versa.

4. These Interrogatories are continuing in nature and require amendment or supplementation if You or Your attorneys later become aware of facts or documents that indicate that the response previously given was incorrect or incomplete. If You do not have all of the information that You need to provide a complete response to any Interrogatory, provide all information that You do have, state that Your information is incomplete, identify the information that You would need to provide a complete response and provide a supplemental response when You obtain the information necessary to do so.

## INTERROGATORY

1. Identify all Persons who have knowledge or information concerning the subject matter of this action, including but not limited to the following areas:

a. The underwriting and drafting of the Insurance Policies;

b. The factual and legal bases for the affirmative defenses asserted in Your Answer to the Complaint;

3

   c. The application of the Insurance Policy terms, provisions, conditions and exclusions to the claims that PTP has asserted under the Bumbershoot Policy in respect of its Spill Occurrence-related losses;

   d. The drafting, construction and application of each Insurance Policy term, provision, condition or exclusion that You contend, or may contend, applies to reduce, limit or negate insurance coverage for any claim(s) that PTP has asserted under the Bumbershoot Policy in respect of its Spill Occurrence-related losses;

   e. Your and Your Representatives' handling, investigation, evaluation and responses to PTP's claims under the Bumbershoot Policy in respect of its Spill Occurrence-related losses; and

   f. Your coverage determinations under other marine liability insurance policies that You issued, or to which You subscribed, concerning insurance claims submitted by other insureds for losses arising from oil pollution-related incidents.

Dated: May 16, 2008

      DICKSTEIN SHAPIRO LLP

      By: _____
       Stephen A. Dvorkin (SD-3401)
       John P. Winsbro (JW-5211)
       1177 Avenue of the Americas
       New York, New York 10036
       Tel.: (212) 277-6500
       Fax: (212) 277-6501

      Attorneys for Plaintiff
      Petroterminal de Panama, S.A.

DOCSNY.308182.01

Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PETROTERMINAL DE PANAMA, S.A, | x<br>:<br>: | CIVIL ACTION NO.:<br>08 CV 00547 (JSR) |
| | : | |
| Plaintiff, | :<br>: | |
| | : | |
| vs. | :<br>: | |
| | : | |
| HOUSTON CASUALTY COMPANY,<br>NATIONAL LIABILITY & FIRE INSURANCE<br>COMPANY a/k/a NATIONAL FIRE &<br>LIABILITY INSURANCE COMPANY,<br>LIBERTY MUTUAL INSURANCE COMPANY,<br>GREAT AMERICAN INSURANCE COMPANY<br>OF NEW YORK, INDEMNITY INSURANCE<br>COMPANY OF NORTH AMERICA, and<br>CONTINENTAL INSURANCE COMPANY, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | |
| | : | |
| Defendants. | :<br>x | |

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED
TO DEFENDANTS HOUSTON CASUALTY COMPANY, NATIONAL LIABILITY &
FIRE INSURANCE COMPANY A/K/A NATIONAL FIRE & LIABILITY INSURANCE
COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, GREAT AMERICAN
INSURANCE COMPANY OF NEW YORK, INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA AND CONTINENTAL INSURANCE COMPANY**

Plaintiff, Petroterminal de Panama, S.A., by and through its undersigned counsel,
hereby propounds Plaintiff's First Request for Production of Documents to the defendant
insurance companies in this matter ("Insurers"). The Insurers are requested to respond in writing
to the Requests and to produce the documents and tangible things designated below for
inspection and photocopying at the offices of Dickstein Shapiro LLP, 1177 Avenue of the
Americas, New York, New York 10036-2714 within thirty (30) days after service thereof.

**DEFINITIONS**

1. "PTP" means plaintiff Petroterminal de Panama, S.A., and, where applicable,
its officers, directors, employees, partners, subsidiaries or affiliates.

1

2. "Insurers," "You," or "Your" mean defendants Houston Casualty Company, National Liability & Fire Insurance Company a/k/a National Fire & Liability Insurance Company, Liberty Mutual Insurance Company, Great American Insurance Company of New York, Indemnity Insurance Company of North America, and Continental Insurance Company, and, where applicable, their officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

3. "Spill Occurrence" means the oil spill pollution incident that occurred on or about February 4, 2007 at PTP's Chiriqui Grande, Panama oil storage and transportation facility.

4. "Claim" means any and all kinds of claims, suits, actions, causes of action, direct actions, rights, orders, notice of partial or total responsibility, assertions of liability or obligation, oral demands, written demands, or any other form of action, all of the foregoing including, but not limited to, Claims for bodily injury, personal injury, restitution, equitable, injunctive, administrative, regulatory relief, compensatory, economic or punitive damages, statutory fines, or penalties brought or sought by any Person.

5. "Claim File" means all Documents which refer or relate to liability claim(s) against a Person insured by You, including, without limitation, all Documents concerning the availability or extent of insurance coverage for such claim(s). "Claim File" encompasses, without limitation, all Documents in Your claims section, division, unit, or department.

6. "Communication" shall have the meaning set forth in Local Civil Rule 26.3(c)(1).

7. "Complaint" means the Complaint filed in this action on January 22, 2008 and any Amended Complaints thereafter.

8. "Document" shall have the meaning set forth in Local Civil Rule 26.3(c)(2).

2

9. "Identify" shall have the meaning set forth in (i) Local Civil Rule 26.3(c)(3) with respect to Persons and (ii) Local Civil Rule 26.3(c)(4) with respect to Documents.

10. "Bumbershoot Policy" means Marine Excess Liability Policy No. 06/663 issued for the December 1, 2006 – December 1, 2007 time period, including, but not limited to, any riders, endorsements, amendments, binders, side-bar agreements, cover notes, placing slips, line slips, daily reports, memoranda of insurance, certificates of insurance, and any wording, clause, term, condition, provision, endorsement, limitation, definition, amendment, or exclusion incorporated or contained therein, and any change or modification thereof.

11. "Primary Policy" means Marine Comprehensive Liability Insurance Policy No. 06/662 issued for the December 1, 2006 – December 1, 2007 time period, including but not limited to, any riders, endorsements, amendments, binders, side-bar agreements, cover notes, placing slips, line slips, daily reports, memoranda of insurance, certificates of insurance, and any wording, clause, term, condition, provision, endorsement, limitation, definition, amendment, or exclusion incorporated or contained therein, and any change or modification thereof.

12. "Insurance Policies" means the Bumbershoot Policy and the Primary Policy as defined above.

13. "Person" shall have the meaning set forth in Local Civil Rule 26.3(c)(6).

14. "Concerning" shall have the meaning set forth in Local Civil Rule 26.3(c)(7).

15. "Representative" includes both the singular and plural and means:

a. any past or present officer, director, partner, associate, employee, servant, agent, subsidiary, affiliate, legal counsel, or agent of a Person; and

b. any other Persons acting or purporting to act on behalf of, or in concert with such Persons, including, without limitation, insurance brokers or agents, auditors, actuaries, or consultants of any type.

3

DOCSNY.305831.04

16. "Underwriting File" means all Documents which concern the negotiation, underwriting, placement, purchase, drafting, execution of, or payment for liability insurance policies, whether or not such policies ultimately were issued by You.

## INSTRUCTIONS

1. You are requested to produce all Documents that are in Your, or any of Your Representatives,' possession, custody or control, including Persons consulted concerning any factual matters or matters of opinion concerning any of the facts or issues involved in this case; such persons shall include attorneys with whom You consulted unless You claim such Documents are privileged or otherwise protected.

2. Each request for a Document, whether memoranda, reports, letters, minutes or other Documents of any description, requires the production of the Document in its entirety, including all pages and attachments or exhibits, without redaction or expurgation.

3. If any Document responsive to these requests is withheld from production, please furnish a log providing the following information with respect to each withheld Document:

 a. The type of Document (e.g., a letter, memorandum, note, etc.);

 b. The date of the Document;

 c. The identity (including the job title, where available) of each individual who was an author, addressee, or recipient of the Document;

 d. A brief description of the subject matter of the Document detailed enough to permit analysis of the basis upon which it is being withheld; and

 e. The basis for any claim of privilege, work product or other grounds of nondisclosure.

4. If any Document called for by the these Requests is or has at any time been maintained by any insurance broker or intermediary, specifically identify such Document, state whether it is currently maintained by such broker or intermediary and, if not, the period during which such Document was maintained by such broker or intermediary and the date when such custody ceased, and the present location and custodian of the Document.

5. If any Document responding to any Request is not currently available, include a statement to that effect and furnish whatever Documents are available. Include in Your statement when such Documents were most recently in Your possession or subject to Your control and what disposition was made of them, and identify by name, job title and the last known business address, each person currently in possession or control of such Documents. If any of such Documents have been destroyed, identify by name, job title and last known business address, each Person who directed that the Documents be destroyed, the Person(s) actually destroying the Documents, and state the reasons the Documents were destroyed. Also, if a log or list of such destroyed Documents was prepared, produce that log or list.

6. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

7. The past tense shall be construed to include the present tense and vice versa to make the Request inclusive rather than exclusive.

8. The use of the singular form of any word includes the plural and vice versa.

9. "Including" shall mean "including, but not limited to."

10. These Requests are continuing in nature and require amendment or supplementation if You or Your attorneys later become aware of facts or Documents that indicate that the response previously given was incorrect or incomplete. If You do not have all

5

of the information that You need to make a complete response to any Request, provide all Documents that You do have, state that Your information is incomplete, identify the information You would need to make a complete production of Documents and provide a supplemental production when You obtain the information necessary to do so.

## TIME PERIOD

Unless otherwise stated, the time period covered by each Request ("Time Period") is from January 1, 2000 to date.

## DOCUMENT REQUESTS

1. All Documents concerning the Insurance Policies, including.

a. all Documents concerning the drafting, negotiation, formation, underwriting, preparation, negotiation, approval, issuance, underwriting, placement, sale, purchase or issuance of the Insurance Policies; and

b. all Underwriting Files and any insurance applications or questionnaires concerning the Insurance Policies.

2. All Documents concerning the drafting, formulation, meaning, construction, or interpretation of the terms, provisions, conditions or exclusions of the Insurance Policies, including any Insurance Policy term, provision, condition or exclusion that You contend, or may contend, applies to reduce, limit or negate insurance coverage for PTP's Spill Occurrence-related losses.

3. All Documents, including Claim Files that You maintain, or any Person maintains on Your behalf, concerning the Spill Occurrence or PTP's Claims for insurance for its Spill Occurrence-related losses.

4. All Documents which constitute or concern internal guidelines, policies, manuals, directives or procedures concerning the handling, making or processing of insurance

6

coverage determinations that were used by or available to Persons or entities employed by You or who were acting on Your behalf at any time during the Time Period.

5. All Documents concerning premiums paid to You in connection with the Bumbershoot Policy.

6. All Documents which constitute or concern internal guidelines, policies, manuals, directives or procedures concerning the drafting, negotiation, formation and/or underwriting of liability insurance policies that were used by or available to Persons employed by You or who were acting on Your behalf at any time during the Time Period.

7. All Documents or charts which concern the organization or structure of Your company during the Time Period, including, but not limited to, Documents which describe the organization or structure of the underwriting department, the claim department, the loss control department or any division, department or group with any responsibility for or involvement with Claims arising from oil pollution-related damage or injuries.

8. All advertisements, marketing materials, promotional materials, information circulars, speeches, or presentations made or used at any time by You concerning insurance coverage for oil pollution-related Claims, whether such materials were published in newspapers or journals, distributed internally to Your employees, distributed externally to brokers or policyholders, or disseminated as speeches or handouts at any meetings.

9. All Documents which constitute or concern Communications between You and PTP or any other entity concerning insurance coverage provided by You for Claims arising from oil pollution-related incidents.

10. All Documents concerning the availability or extent of insurance coverage for PTP's Spill Occurrence-related losses, including Documents concerning any coverage determination You or any Person acting on Your behalf has made, or any coverage analysis You

or any Person acting on Your behalf has conducted, concerning PTP's Spill Occurrence-related losses.

14.  11.  All Documents concerning any analysis, report, investigation, study or assessment of the facts or issues concerning the Spill Occurrence or PTP's Claims for its Spill Occurrence-related losses.

12.  All Documents that You contend support or tend to support any defense raised by You to any Claim made by PTP for insurance coverage for its Spill Occurrence-related losses.

13.  All Documents concerning payments made by You to, or on behalf of, PTP in connection with the Spill Occurrence.

14.  All Documents, including manuals, bulletins, or guidelines concerning Your procedures or practices concerning the investigation of Claims, including, but not limited to, Claims for oil pollution-related incidents.

15.  All Documents that You have produced or made available for inspection or production in any lawsuit in which insurance coverage for oil pollution-related injuries or damage is or was at issue.  This Request includes, but is not limited to, deposition transcripts, trial transcripts, and affidavits of testimony given by Your past or present employees, agents, or expert witnesses, in any lawsuit or arbitration proceeding concerning insurance or reinsurance coverage for Claims related to oil pollution-related injuries or damage.

16.  All judicial or arbitral orders, rulings, decisions, or opinions from cases in which You are or were a party which concerned insurance or reinsurance coverage for Claims for oil pollution-related damage or injuries.

17.  The minutes or other written documentation, including, without limitation, attachments, handouts, agendas or notes made by participants, of every meeting of Your board of

directors, any committee or subcommittee thereof or task force or working group thereof, or any other executive task force or working group at which the availability of insurance coverage for oil pollution-related damage or injuries was discussed.

18. All Documents concerning Your document retention or document destruction policies, practices or procedures.

Dated:  May 16, 2008

DICKSTEIN SHAPIRO LLP

By: _____
Stephen A. Dvorkin (SD-3401)
John P. Winsbro (JW-5211)
1177 Avenue of the Americas
New York, New York  10036
Tel.: (212) 277-6500
Fax: (212) 277-6501

Attorneys for Plaintiff
Petroterminal de Panama, S.A.

9

Exhibit E

**Winsbro, John**

| | |
|---|---|
| **From:** | Dvorkin, Stephen |
| **Sent:** | Tuesday, July 08, 2008 2:47 PM |
| **To:** | Jay Lonero; 'Jeff Bridger'; Gary Centola |
| **Cc:** | Winsbro, John |
| **Subject:** | Petroterminal de Panama, S.A. v. Houston Casualty Company, et al., 08 Civ. 0547 (JSR) |
| **Importance:** | High |

Gentlemen:

I write to advise you, as a courtesy, that PTP will shortly be moving to impose appropriate sanctions on the bumbershoot insurers by reason of their wholesale flouting of their discovery obligations in the above-captioned action, as set out in the Federal Rules of Civil Procedure.  Bumbershoot insurers were aware that Judge Rakoff's case management plan contemplated an early trial of this action, and yet they have failed to make the Required Disclosures called for by Fed. R. Civ. P. 26(a), in spite of repeated reminders from PTP--and notwithstanding their own repeated promises that the required disclosures would be made shortly.   (Bumbershoot insurers' have also failed to respond to PTP's interrogatories, and PTP's requests for production of documents.)

 PTP's ability to prepare to try its claims by the October 14, 2008 trial date set by the Case Management Order is now irremediably compromised.    Because the prejudice to our client's interests is irremediable, our determination to make the aforedescribed sanctions motion is inalterable.  Accordingly, no response to this email is required or anticipated; and the email is being sent, as noted, simply as a courtesy.

-- Steve Dvorkin

**Stephen A. Dvorkin**
Partner
Dickstein Shapiro LLP
1177 Avenue of the Americas | New York, NY 10036
Tel (212) 277-6570 - Fax (212) 277-6501
DvorkinS@dicksteinshapiro.com

Exhibit F

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

PETROTERMINAL DE PANAMA, S.A.,

                           Plaintiff

VERSUS

HOUSTON CASUALTY COMPANY,
NATIONAL LIABILITY & FIRE
INSURANCE COMPANY a/k/a
NATIONAL FIRE & LIABILITY
INSURANCE COMPANY, LIBERTY
MUTUAL INSURANCE COMPANY,
GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK,
INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA, and
CONTINENTAL INSURANCE
COMPANY

                           Defendants

Civil Action No. 08 CV 00547-JSR/AJP

**DEFENDANTS' INITIAL DISCLOSURES**

Defendants, Houston Casualty Company, National Liability & Fire Insurance Company a/k/a National Fire & Liability Insurance Company, Liberty Mutual Insurance Company, Great American Insurance Company of New York, Indemnity Insurance Company of North America, and Continental Insurance Company (hereinafter collectively referred to as "Defendants" or "Bumbershoot Underwriters"), hereby submit the following initial disclosures in accordance with Federal Rule of Civil Procedure 26(a)(1):

1.    **INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION**

Bumbershoot Underwriters identify the following individuals believed to have relevant knowledge or information that may be relied upon in support of defenses herein:

Hugh Gallagher
Cunningham & Lindsey International, Inc.
Carrera 11 No. 71-40, Oficina 301
Edificio Valparaiso
Bogota, Colombia

Believed to have knowledge of timing of notice from Assured regarding claim and clean-up operations, status of spill clean-up operations and initial investigation of spill incident on behalf of Primary Underwriers.

Steven Toomer
Cunningham & Lindsey International, Inc.
Carrera 11 No. 71-40, Oficina 301
Edificio Valparaiso
Bogota, Colombia

Believed to have knowledge of timing of notice from Assured regarding claim and clean-up operations, status of spill clean-up operations and initial investigation of spill incident on behalf of Primary Underwriers.

Pedro Gonzalez
c/o Petroterminal de Panama SA

Believed to have knowledge regarding the scope and details of certain clean up work and certain of PTP's questioned claim items.

Esteban Quintero
c/o Petroterminal de Panama SA

Believed to have knowledge regarding the scope and details of certain clean up work and certain of PTP's questioned claim items.

Javier Arauz
c/o Petroterminal de Panama SA

Believed to have knowledge regarding the scope and details of certain clean up work and certain of PTP's questioned claim items.

Kadhir Campos
c/o Petroterminal de Panama SA

Believed to have knowledge regarding the scope and details of certain clean up work and certain
of PTP's questioned claim items.


Carlos Sagrera
c/o Ocean Pollution Control, SA
Corozal Oeste, Edificio 369
Panama City, Panama
Phone:  507-317-6868

Believed to have knowledge regarding the scope and details of certain clean up work and certain
of PTP's questioned claim items particularly in regard to work performed by OPC.


Eliskha Alvarez
c/o Ocean Pollution Control, SA
Corozal Oeste, Edificio 369
Panama City, Panama
Phone:  507-317-6868

Believed to have knowledge regarding the scope and details of certain clean up work and certain
of PTP's questioned claim items particularly in regard to work performed by OPC.


Victor Sanchez
c/o Ocean Pollution Control, SA
Corozal Oeste, Edificio 369
Panama City, Panama
Phone:  507-317-6868

Believed to have knowledge regarding the scope and details of certain clean up work and certain
of PTP's questioned claim items particularly in regard to work performed by OPC.


Joseph Valenza
Frenkel & Co., inc.
350 Hudson Street
New York, NY 10014
Phone:  212-488-1828

Believed to have knowledge regarding placement and authorship of policies at issue, initial reporting by PTP of the oil spill claim at issue and initial reporting of the oil spill incident to Primary, then Bumbershoot Underwriters.


James Renner
Frenkel & Co., inc.
350 Hudson Street
New York, NY 10014
Phone:  212-488-1828

Believed to have knowledge regarding placement and authorship of policies at issue, initial reporting by PTP of the oil spill claim at issue and initial reporting of the oil spill incident to Primary, then Bumbershoot Underwriters.


Thomas A. Krempecki
Frenkel & Co., Inc.
1740 Broadway, 5th Floor
New York, NY 10019
Phone: 212-488-1853

Believed to have knowledge regarding placement and authorship of policies at issue, initial reporting by PTP of the oil spill claim at issue and initial reporting of the oil spill incident to Primary, then Bumbershoot Underwriters.


Edward Anderson
Marine Claims Specialist
Fireman's Fund Insurance Company
One Chase Manhattan Plaza, 37th Floor
NewYork, NY 10005
Phone: 212-524-7919

Believed to have knowledge regarding initial reporting by PTP of the oil spill claim at issue, initial reporting of the oil spill incident to Primary, then Bumbershoot Underwriters by Frenkel and initial investigation of claim.


Victor Urrutia
Semusa
Calle 74 Este y Avenida 5ta Sur
San Francisco, República de Panamá
Phone: (507) 270-6000

4

Believed to have knowledge regarding initial reporting by PTP of the oil spill claim at issue, information provided to Frenkel, initial investigation and documentation of claim, and other insurance coverage(s) applicable.


Joseph C. Morency
Continental Underwriters, Ltd.
135 Pinelawn Road, Suite 150 North
Melville, New York 11747
Phone: (631) 391-5430

Believed to have knowledge regarding placement and authorship of policies at issue, PTP's application and information provided in application for Bumbershoot Policy; underwriting intent.


Michael Shreve
Continental Underwriters, Ltd.
2235 N. Highway 190
P.O. Box 2070
Covington, Louisiana 70434-2079

Believed to have knowledge regarding reporting by PTP of the oil spill claim at issue, information provided by and to Frenkel, investigation and documentation of claim, continued consideration of claim submissions and other insurance coverage(s) applicable.


Carolyn O'Connor
VeriClaim, Inc.
120 Broadway - Suite 900
New York, New York 10271
Phone: (212) 266-4255

Believed to have knowledge regarding reporting by PTP of the oil spill claim at issue, information provided by and to Frenkel, investigation and documentation of claim, continued consideration of claim submissions and other insurance coverage(s) applicable.


Anthony Schiavone
Liberty International Underwriters
55 Water Street, 18th Floor
New York, NY 10041
Phone: 212.208.4164

Believed to have knowledge regarding reporting by PTP of the oil spill claim at issue, information provided by and to Frenkel, investigation and documentation of claim, continued consideration of claim submissions and other insurance coverage(s) applicable.

Carl Hees
Great American Insurance Companies
Ocean Marine Division
65 Broadway, 20th Floor
New York, NY 10006
Phone: 212.510.0106

Believed to have knowledge regarding reporting by PTP of the oil spill claim at issue, information provided by and to Frenkel, investigation and documentation of claim, continued consideration of claim submissions and other insurance coverage(s) applicable.


Alexandra Portes
CNA - U.S. Marine Claims
40 Wall Street, 9th Floor
New York, NY 10005
Phone: 212.440.3998

Believed to have knowledge regarding reporting by PTP of the oil spill claim at issue, information provided by and to Frenkel, investigation and documentation of claim, continued consideration of claim submissions and other insurance coverage(s) applicable.


Matt Raia
ACE USA ~ Commercial Marine Claims
140 Broadway, 40th Floor
New York, NY  10005
Phone: 646.458.6929

Believed to have knowledge regarding reporting by PTP of the oil spill claim at issue, information provided by and to Frenkel, investigation and documentation of claim, continued consideration of claim submissions and other insurance coverage(s) applicable.

Elizabeth Ann McConaghy
Senior Vice President and General Counsel
NIC Holding Corp.
25 Melville Park Road
Melville, N.Y.  11747-0398
Phone:  631-753-4221

Believed to have knowledge regarding reporting by PTP of the oil spill claim at issue, substance of Northville/Petroterminal's initial claim submitted to Bumbershoot Underwriters by correspondence dated January 18, 2008 and other insurance coverage(s) applicable.

6

Telephone numbers are provided in accordance with Federal Rule of Civil Procedure 26. However, opposing counsel should not contact employees or contractors of Bumbershoot Underwriters or of any other represented party directly, but only through their counsel. Potential witnesses who are employees or contractors of Bumbershoot Underwriters can be scheduled for deposition through requests made to undersigned counsel.

**2.      DOCUMENTS ANTICIPATED TO BE USED IN SUPPORT OF DEFENSES**

Aseguradora Mundial S.A. All Risk Program 507/P06DR01570

Primary Marine Comprehensive Liability Insurance Policy No. 06/662

Bumbershoot Liabilities Policy No. 06/663

Jan. 18, 2008 Northville Letter with $4,365,546.66 Demand

Copies of these documents are produced herewith.

As discovery is in its infancy, Bumbershoot Underwriters anticipate that additional documents and information will come to light which will further support its defenses in this matter; they, therefore, reserve the right to supplement these disclosures.

**3.      COMPUTATION OF DAMAGES**

Bumbershoot Underwriters are not claiming damages.

**4.      INSURANCE AGREEMENTS**

Primary Marine Comprehensive Liability Insurance Policy No. 06/662

Bumbershoot Liabilities Policy No. 06/663

Aseguradora Mundial S.A. All Risk Program 507/P06DR01570

Respectfully submitted,

**LARZELERE PICOU WELLS**
  **SIMPSON LONERO, LLC**
Suite 1100 - Two Lakeway Center
3850 N. Causeway Boulevard
Metairie, Louisiana 70002
Telephone: (504) 834-6500
Facsimile: (504) 834-6565

/s/ R. Jeffrey Bridger

BY: _____

**JAY M. LONERO (LSBA No. 20642)**
**R. JEFFREY BRIDGER (LSBA No. 01263)**

**ATTORNEYS FOR DEFENDANTS,**
**HOUSTON CASUALTY COMPANY,**
**NATIONAL LIABILITY & FIRE INSURANCE**
**COMPANY A/K/A NATIONAL FIRE &**
**LIABILITY INSURANCE COMPANY,**
**LIBERTY MUTUAL INSURANCE**
**COMPANY, GREAT AMERICAN**
**INSURANCE COMPANY OF NEW YORK,**
**INDEMNITY INSURANCE COMPANY OF**
**NORTH AMERICA, AND CONTINENTAL**
**INSURANCE COMPANY**

**OF COUNSEL:**

**RIVKIN RADLER LLP**

**Gary D. Centola [GC-3478]**
**Michael A. Kotula [MK-7455]**
**926 EAB Plaza, West Tower**
**Uniondale, New York 11556-0926**
**(516) 357-3000**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded to all known

counsel of record via email, telefacsimile and/or by placing a copy of same in the U. S. Mail,

postage prepaid, this _14_ day of __July__, 2008.

/s/ R. Jeffrey Bridger_____

8